Jerry Glenn PATTERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 272–87.

Court of Criminal Appeals of Texas,
En Banc.

March 8, 1989.

Paul Francis, Temple, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Asst. Dist. Atty., Belton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was convicted, after a jury trial, of illegally possessing less than 28 grams of methamphetamine. Art. 4476–15, §§ 4.02(b)(6), 4.04(b), V.A.T.S. The verdict reflects that in response to a special issue the jury also found that "the defendant used or exhibited a deadly weapon during the commission of the offense which we found the defendant guilty." A punishment of 25 years, enhanced by two prior felony convictions, was assessed by the trial court. An affirmative finding of use of a deadly weapon was entered in the judgment. Art. 42.12, § 3g(a)(2), V.A.C.C.P. The Austin Court of Appeals affirmed the judgment of conviction, but it set aside the assessment of punishment and remanded for a reassessment of punishment.[1] *Patterson v. State*, 723 S.W.2d 308 (Tex.App.—Austin 1987). We granted appellant's petition for discretionary review to determine only whether the court of appeals

erred in defining "use," within the meaning of Art. 42.12, § 3g(a)(2), to mean *"any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson, supra,* at 315.[2]

Based on information received from a confidential informant, police obtained a search warrant for the home of David Law. When officers arrived to execute the warrant, they saw at least two people enter Law's apartment. A few moments later, the officers went to the door, knocked, and announced themselves as police officers. After waiting approximately ten seconds, the officers kicked in the door. Another officer was at the back door and entered by the same means. Upon gaining entry, the officer who entered the front door observed seven people in the living room. Two others were discovered elsewhere in the apartment.

The appellant was sitting on a sofa in the living room. He was seated at the extreme, left end, which was nearest to the front door. Next to appellant was an end table. On the table was a suede bag, a wallet, and a "gun boot." As one officer approached him, appellant raised his hands and said "I have a gun right here, but I'm not going to touch it." As he said this, appellant indicated a location between his left leg and the end of the sofa. The officer retrieved the gun, and then the items on the end table. A subsequent search revealed that the wallet contained $905; the bag held 1.10 grams of methamphetamine and miscellaneous drug paraphernalia; and the "gun boot" contained several rounds of ammunition which fit the gun that had been seized. Soon after this, appellant was arrested and taken to the police station.

Art. 42.12, § 3g(a)(2), *supra*, provides as follows:

---

1. The court of appeals' decision on assessment of punishment has no bearing on the issue currently before this Court.

2. Appellant suggests that we grant review because the court of appeals appears to have mis-

construed a statute. See Tex.R.App.Pro. 200(c)(4). While this ground is appropriate, we could have also granted review under Rule 200(c)(2). This Court has never construed the meaning of "use" in Art. 42.12, § 3g(a)(2).

(a) The provisions of Sections 3 and 3c of this Article do not apply:

\*    \*    \*    \*    \*    \*

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.

■ The court of appeals began its discussion of the propriety of the affirmative finding by determining the scope of felonies embraced by Art. 42.12, § 3g, and decided that *all* felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon. We agree with this conclusion.

The court next summarized a series of cases which construed the meaning of "use a weapon" in other contexts.[3] These cases rejected a narrow construction which would have defined "use" to mean "fire" in the case of a gun. Desiring to make the statute flexible in its deterrence of danger to human life, the court adopted the approach of the cases cited, holding "use" to constitute *"any* employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony." *Patterson, supra,* at 315.

The appellant couches his argument in terms of the sufficiency of evidence to support an affirmative finding that he used a deadly weapon. He argues that the gun was difficult for the officer to find, and that there was no evidence of a threat involving the gun. At trial, the State argued that the appellant had the gun in order to protect his drugs and to facilitate their possession. Appellant counters by claiming that if the gun was to facilitate possession of anything, it was to protect his $905 cash. The State filed no brief or response before this Court.

■ The court of appeals found that, although stated as a sufficiency question, appellant's argument is essentially one of statutory construction. *Id.,* at 314. We agree. There are a multitude of rules for statutory construction, and authority exists in support of virtually every position one might wish to take. The most common thread running through these competing maxims is for the judiciary to attempt to effectuate the intent of the Legislature. Direct reference to the evolution of Art. 42.12, § 3g, *supra,* through both houses of the Legislature and conference committee sheds no light on what the Legislature intended to be meant by "used or exhibited a deadly weapon," and tapes of the legislative debates and committee hearings are equally as barren. We are left with the words of the statute itself and a collection of often conflicting rules of construction.

■ One thing is clear however, in construing the statute it is necessary that the verb forms of the words "use" and "exhibit" be "read in context and construed according to rules of grammar and usage." Sec. 311.011(a), *Tex. Gov't. Code.*[4] At the outset it is essential to note that "use" and "exhibit" are not synonymous. Each word is exemplary of different types of conduct. "Use," as a verb, may mean a number of things. For example, "use" is defined as "to put into action or service: have recourse to or enjoyment of: employ ... to

---

3. The court cited *Gaston v. State,* 672 S.W.2d 819 (Tex.App.—Dallas 1983, no pet.), and incorrectly attributed it to this Court.

4. The Code Construction Act applies to all amendments and revisions of a code or code provision made after the 59th Legislature. *Tex. Gov't. Code,* § 311.002(2). Art. 42.12, § 3g(a)(2), was added to the Code of Criminal Procedure by the 65th Legislature.

carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage: turn to account: utilize." *Webster's Third New International Dictionary* (1976), p. 2523–2524. In explicating the word the dictionary provides the following synonym: "employ, utilize, apply, avail: use is general and indicates putting to service of a thing, usu. for an intended or fit purpose...." *Id.*

"Exhibit," on the other hand, as a verb, is much more definitive in its meaning: "to present to view: show, display: as a. to show (as a feeling) or display (as a quality) outwardly esp. by visible signs or actions." *Id.*, at 796.

Comparing the words, both are transitive verbs because they require an object to complete their meaning. In the language of the statute their object is a "deadly weapon." In contrasting the word's definitions, "use" is commonly employed to describe conduct in which the verb's object, again, in this case a deadly weapon, is utilized in order to achieve a purpose. In other words, the deadly weapon must be utilized, employed, or applied in order to achieve its intended result: "the commission of a felony offense or during immediate flight therefrom." Art. 42.12, § 3g(a)(2), *supra*. Conversely, "exhibit" only requires that a deadly weapon be consciously shown, displayed, or presented to be viewed during "the commission of a felony offense or during immediate flight therefrom" *Id.*

■■■ Thus, "used ... a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. Whereas "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense. Therefore, the court of appeals was correct when it stated that " 'used ... during the commission of a felony offense' refers certainly to the

wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson v. State, supra,* at 315. However, to "exhibit" a deadly weapon it need only be consciously displayed during the commission of the required felony offense. Thus, one can "use" a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it.

In *United States v. La Guardia,* 774 F.2d 317 (8th Cir.1985), the defendants were convicted of possession of cocaine with the intent to distribute [18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) ] and using a firearm during the commission of a felony. Briefly, during a search of the defendants' residence the police found a quantity of cocaine, $9,800, and a loaded .22 caliber pistol inside a purse, a nine millimeter automatic pistol in a hall closet, and a .44 caliber rifle in one of the defendants' automobile. On appeal one of the defendants claimed that there was insufficient evidence to prove his use of a firearm to commit a felony.

Prior to its amendment in 1986, 18 U.S.C. § 924(c)(1), increased the scope of permissible punishment for "[W]hoever—(1) uses a firearm to commit any felony ..., or (2) carries a firearm unlawfully during the commission of any felony."[5] The federal statute identifies the prohibited conduct as "uses" and "carries." The circuit court of appeals in interpreting this statute commented that "Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of the felony." *United States v. La Guardia, supra,* at 321. See also: *United States v. Grant,* 545 F.2d 1309 (2nd Cir.1976), *cert denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977); *United States v. Moore,* 580 F.2d 360 (9th Cir.1977), *cert denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

---

**5.** 18 U.S.C. § 924(c)(1), *et seq.* now is applicable only to a "crime of violence or drug trafficking crime."

Under the facts, the court of appeals concluded that the "weapons had undoubted utility in the protection of the valuable supply and cash on hand." *Id.*, at 321.

The facts in *United States v. La Guardia, supra,* and those in the present case are quite similar. The appellant claims that the weapon, if used at all, was used to protect his $905. That could obviously be true, but as in *La Guardia, supra,* it does not mean that the weapon had no utility to his protection of the drugs.

The court of appeals determined "that a rational trier of fact could find that appellant 'used' the firearm during the commission of the felony offense of possessing the contraband, in a sense that the firearm protected and facilitated appellant's care, custody, and management of the contraband." We will defer to the collective judgment of the court of appeals in this regard and accordingly reject appellant's point of error.

The judgment of the court of appeals is affirmed; however, the cause is remanded to the trial court for reassessment of punishment as ordered by the court of appeals.

CLINTON and TEAGUE, JJ., dissent.