Katherine CLINTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–10–00090–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 3, 2010.

Decided Nov. 17, 2010.

Tim Cone, Gilmer, for appellant.

Billy W. Byrd, Dist. Atty., Christie M. Martin, Asst. Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Katherine Clinton admits that she attempted to purchase cigarettes with the debit card of another person. Her resulting conviction for credit or debit card abuse was based on an indictment charging that Clinton "used" the debit card but omitting any allegation that she "presented" the card. Clinton's appeal of her conviction centers on that wording of the indictment. Clinton argues that, because the State proved only that she "presented" the debit card, the evidence is legally and factually insufficient to support a conclusion that she "used" it. We agree. In this situation, the State was obligated to prove the indictment's allegation that Clinton "used" the card, an integral part of an essential element of the crime as alleged in the indictment. Because (1) the evidence is legally insufficient that Clinton "used" the card, within the meaning of the statute, and (2) Clinton requested a lesser-included-offense instruction on attempted credit or debit card abuse, we reverse Clinton's conviction, reform the judgment to reflect a conviction of attempted credit or debit card abuse, and remand this case to the trial court for a new sentencing proceeding.

*(1) The Evidence Is Legally Insufficient that Clinton "Used" the Card, Within the Meaning of the Statute*

A person commits the offense of credit or debit card abuse when "with intent to obtain a benefit fraudulently," he or she "presents or uses a credit card or debit card with knowledge that ... the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder." TEX.

PENAL CODE ANN. § 32.31(b) (Vernon Supp. 2010).[1] The indictment alleged Clinton

did then and there with intent to fraudulently obtain a benefit, *use* a debit card, namely a First National Bank debit card, with knowledge that the card had not been issued to the said defendant, and with knowledge that said card was not used with the effective consent of the cardholder, namely, S. Hubbard.

(Emphasis added.) While the State presented evidence that Clinton attempted to use the debit card, the State did not present any evidence that Clinton actually purchased anything with, or received any value from, the card.

The first question presented in our analysis is whether the State is bound by its allegations in the indictment. The State argues that the hypothetically correct jury charge would not be affected by its allegations in the indictment. The Texas Court of Criminal Appeals has held that evidentiary sufficiency should be measured against a "hypothetically correct" jury charge. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex.Crim.App.2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). *Malik* controls "even in the absence of alleged jury charge error." *Gollihar*, 46 S.W.3d at 255.

A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "hypothetically correct" jury charge cannot completely rewrite the indictment, but such a charge need not "track exactly all of the allega-

1. Section 32.31 has been amended since the alleged commission of the offense in this case, but none of the amendments are relevant to this appeal.

tions in the indictment." *Gollihar*, 46 S.W.3d at 253. If the essential elements of the offense are modified by the indictment, the modification must be included. *Id.* at 254. The hypothetically correct charge, however, "need not incorporate allegations that give rise to immaterial variances." *Id.* at 256.

The " 'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).[2] The hypothetically correct jury charge must include both (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means and (2) material variances. *Mantooth v. State*, 269 S.W.3d 68, 74 (Tex. App.-Texarkana 2008, no pet.) (number of statute creating duty to register was not integral part of essential element); *see Gollihar*, 46 S.W.3d at 256.

Of the various ways to commit credit or debit card abuse, Section 32.31(b) of the Texas Penal Code provides as follows, in pertinent part:

(b) A person commits an offense if:

(1) with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that:

(A) the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder. . . .

TEX. PENAL CODE ANN. § 32.31(b).

The first step in our analysis is to determine whether the phrase "presents or uses" sets out integral parts of an essential element of the crime, a statutory alternative manner and means of committing it, or mere extraneous statutory language. The Texas Court of Criminal Appeals has set out how to identify the essential elements of an offense and the alternate modes of commission, if any, by parsing the statutory text into the various parts of speech according to the rules of grammar. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex.Crim.App.2007) (determining whether jury unanimity was required).

The essential elements of an offense are, at a minimum: (1) "the subject (the defendant);" (2) "the main verb;" (3) "the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime);" "the specific occasion[;]" and the requisite mental state. The means of commission or non-essential unanimity elements are generally set out in "adverbial phrases" that describe how the offense was committed. Such phrases are commonly preceded "by the preposition 'by[.]' "

*Id.* at 714–15.

Our *Pizzo*-directed analysis reveals that the subject of subsection (b)(1) of the statute is the pronoun "he" referring to "a person," male or female. The words "presents or uses" are the main verbs, and "card" is the direct object. The phrase "with knowledge . . . that the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder," dictates the requisite mental state. Thus, the words "presents or uses," as the main verbs, are integral parts of an essential element of

---

**2.** Presiding Judge Keller has summarized *Curry* as holding, "[w]hen a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged." *Fuller v. State*, 73 S.W.3d 250, 255 (Tex.Crim.App. 2002) (Keller, P.J., concurring).

the offense.[3] The Texas Court of Criminal Appeals has instructed that any modification in an integral part of an essential element of the offense must be included in the hypothetically correct jury charge. *Gollihar*, 46 S.W.3d at 254. Thus, here, the State is bound by, and must have proven, its focused allegation that Clinton "used" the credit or debit card.[4]

The next question in our analysis is the meaning of the word "use." The State argues the word "use" includes the conduct at issue. The State urges this Court to adopt a definition that "any employment of the card" qualifies as "use." The State analogizes to the deadly weapon statute, which has been interpreted to include "exhibit" within the definition of "use." Although the deadly-weapon statute provides "used or exhibited,"[5] the Texas Court of Criminal Appeals has construed the term "use" to mean "any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim.App.1989). The court noted this interpretation included exhibiting and stated "one can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it." *Id. Patterson*, however, did not concern a case where only one of the two terms was employed in the State's deadly-weapon allegation. *Id.* As such, those

words from *Patterson* are only dicta, not binding precedent applicable here. Further, deadly weapon allegations are not subject to the same pleading requirements as integral parts of an essential element of an offense. A deadly-weapon allegation need not be presented in an indictment; "[a] defendant is simply entitled to written notice in some form that the use of a deadly weapon will be a fact issue at trial." *Ex parte Minott*, 972 S.W.2d 760, 761 (Tex.Crim.App.1998) (concluding notice of deadly weapon allegation can be waived by pleading guilty).

The presence of both "presents" and "uses" in the statute applicable here, however, suggests that the definitions of the two words are intended to be mutually exclusive. If "uses" is interpreted broadly enough to cover what Clinton has been proven to have committed, the Texas Legislature would have had no purpose for including in the statute the word "presents" in addition to the word "uses." Neither "use" nor "present" are common synonyms for each other. MERRIAM-WEBSTER'S COLLEGIATE THESAURUS 573–74, 825 (1988). "Present," used as a verb, has numerous definitions, including "to hand over or submit, as a bill or check, for payment." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1529 (2d ed. 2001). "Use" also has numerous definitions. *Id.* at 2097. While "use" can certainly be understood so broadly that it could include

---

3. The Texas Court of Criminal Appeals cautioned that "[n]ot every list of alternatives in a statute will constitute a 'manner or means' of committing the offense." *Curry*, 30 S.W.3d at 398.

4. The State cites *Adger v. State*, where the First District Court of Appeals found the evidence sufficient when the State only alleged use and the evidence established the card was refused. 7 S.W.3d 899, 902 (Tex.App.-Houston [1st Dist.] 1999, no pet.). *Adger*, though, does not define the words, does not reference

or cite the hypothetically correct jury charge, and states the issue argued was "the evidence was legally insufficient to prove he presented or used the credit card." *Id.* We do not find *Adger* persuasive, because it does not address the question raised in this case—the allegation of only "uses."

5. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010); *see* TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2010).

the conduct defined as "present," adopting a definition of "use" that includes all the conduct which qualifies as "present" would render the statutory word "present" meaningless. As a general rule of statutory construction, we should avoid statutory constructions that would render any parts of the statute meaningless. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005) (each word in statute intended to be effective); *Ludwig v. State*, 931 S.W.2d 239, 242 (Tex.Crim.App.1996). In order to prevent the term "present" from being rendered meaningless, we conclude that "present" under Section 32.31 means to tender the debit or credit card, and "use" means to employ the card in any other manner including, but not limited to, successfully completing a transaction. Because the allegation at issue in this case is an integral part of an essential element, the State is bound by its allegation in the indictment.[6] The State was obligated to prove that Clinton used the debit card.

▮ Although the State presented evidence that the card had been used to purchase $33.36 worth of gasoline,[7] no evidence linked Clinton to that transaction. All other evidence showed only that Clinton presented the card.

Harmon Greer and John Finney, police officers with the Gilmer Police Department, both testified they had reviewed Wal-Mart's security video recording that showed Clinton attempting to make a purchase with the debit card. The security video recording from Wal-Mart was not introduced into evidence. Both Greer and Finney testified the debit card was declined at Wal-Mart. In a recorded statement introduced into evidence, Clinton admits to attempting to use the debit card to purchase cigarettes first at Wil-Max and then at Wal-Mart. Clinton states that— because her boyfriend's nephew was too young to purchase cigarettes, yet had his parents' permission to smoke cigarettes— she had agreed to purchase cigarettes for the nephew and a friend of his. Clinton claimed that she thought the card belonged to the nephew's friend and that she thought something was wrong only after the card was declined at Wal-Mart. After the card was declined at Wal-Mart, Clinton admits that the nephew and his friend attempted to use the debit card at an ATM to get cash for Clinton to purchase cigarettes[8] and attempted to purchase gasoline at Brookshire Brothers to fill up the tank of Clinton's vehicle. Clinton, though, states the debit card was declined at Wil-Max, Wal-Mart, the ATM, and Brookshire Brothers. Thus, the record fails to establish Clinton employed the debit card in any manner other than tendering it as payment.

Alternatively, in case we interpret "uses" to exclude "presents," the State

---

6. The State may allege alternative theories in the conjunctive. *See Swearingen v. State*, 101 S.W.3d 89, 103 (Tex.Crim.App.2003). The State is bound, however, by its modifications to essential elements and statutory alternative manner and means.

7. Officer John Finney testified the card had been used to purchase $33.36 of gasoline at Brookshire Brothers. There is no evidence that Clinton was involved in this transaction, either as a principal or a party. Although Clinton admits in her interview to being a possible party to an unsuccessful attempt to purchase gasoline at Brookshire Brothers after attempting to use the card at Wal-Mart, she denied that her attempted purchase had been successful. In Clinton's interview, Clinton states she knew the card had previously been used to purchase gasoline. In the interview, Finney states the successful attempt to purchase gasoline occurred before Clinton's visit to Wal-Mart.

8. Finney testified that there had been an unsuccessful attempt to use the debit card at an ATM.

argues that Clinton "used" the debit card by swiping it at the Wal–Mart checkout. Clinton admitted she swiped the card in a card reader provided for customers by Wal–Mart at a checkout station. We are not persuaded, however, that the State's argument adds any meaningful difference to the discussion. This Court takes judicial notice that, in many stores, a credit or debit card is now ordinarily tendered by swiping it—the modern equivalent of handing over a card to a clerk or otherwise submitting it for payment. Thus, in our view, Clinton's act in swiping the card qualifies only as presenting the card—since there is no evidence that her act of swiping the card resulted in a purchase or in value being obtained from the card.

Although the State presented evidence that Clinton was guilty of an act that could have qualified as credit or debit card abuse—i.e., presenting the debit card—the State failed to prove the act alleged in the indictment—i.e., using the debit card. Because there is no evidence that Clinton used the debit card, either as a principal or a party, the evidence is legally insufficient to sustain the conviction.

*(2) Clinton Requested a Lesser–Included–Offense Instruction on Attempted Credit or Debit Card Abuse*

The next question is whether we should modify the judgment to reflect a conviction for the lesser-included offense of attempted credit card abuse. *See* TEX. PENAL CODE ANN. § 15.01 (Vernon 2003), § 32.31. Clinton's trial counsel requested an instruction on attempted credit card abuse, but it was denied by the trial court.[9] Attempted credit or debit card abuse requires evidence that Clinton had the intent to commit credit or debit card abuse and did an

act amounting to more than mere preparation that tended, but failed, to effect the actual commission of the offense intended. *See* TEX. PENAL CODE ANN. §§ 15.01, 32.31.

> [A] court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense and (2) either the jury was instructed on the lesser included offense (at the request of a party or by the trial court sua sponte) or one of the parties asked for but was denied such an instruction.

*Haynes v. State,* 273 S.W.3d 183, 185 (Tex. Crim.App.2008); *Logan v. State,* 48 S.W.3d 296, 307 (Tex.App.-Texarkana 2001), *aff'd,* 89 S.W.3d 619, 630 (Tex.Crim. App.2002); *cf. Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999) (plurality op.). Clinton requested an instruction on attempted credit card abuse that was denied by the trial court, and the evidence is sufficient to support a conviction for attempted credit or debit card abuse. Therefore, we modify the judgment to reflect conviction for attempted credit card abuse.

For the reasons stated, we reverse Clinton's conviction, modify the judgment to reflect a conviction for attempted credit or debit card abuse, and remand this case for a new sentencing proceeding.

---

9. In discussing the matter during the charge conference, the trial court correctly noted that Section 32.31 of the Texas Penal Code does not require that a benefit actually be obtained. The State, though, alleged only "use" and is bound by that allegation.