

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**No. PD-0119-11**

---

**KATHERINE CLINTON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON THE STATE'S AND APPELLANT'S
PETITIONS FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
UPSHUR COUNTY**

---

ALCALA, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., filed a concurring opinion.

## O P I N I O N

A jury convicted appellant, Katherine Clinton, for the state-jail felony of debit card abuse. *See* TEX. PEN. CODE § 32.31(b)(1). The court of appeals reversed appellant's conviction for insufficient evidence and reformed the judgment to reflect a conviction for the lesser-included offense of attempted debit card abuse. *Clinton v. State*, 327 S.W.3d 366 (Tex. App.—Texarkana 2010). The Court determined that the State failed to prove that appellant

"used" the debit card. *Id*.

The State and appellant each filed petitions for discretionary review. The State's petition asks whether the terms "use" and "present" in the debit-card-abuse statute are mutually exclusive so that there is no overlap in the meaning of the words. The State contends that the court of appeals erred by finding that appellant's presentation of the debit card failed to prove that she "used" the debit card and by requiring that "use" of a debit card include proof of consummation of the transaction. Appellant responds that the court of appeals properly determined that the evidence is legally insufficient to prove "use" of a debit card because "use" of a card, unlike presentation of a card, requires proof that the transaction was successfully completed. Appellant's petition inquires whether a court of appeals has the authority to reform a judgment to reflect a conviction for a lesser-included offense when the lesser-included-offense instruction was not in the jury charge and the request for the lesser instruction was not preserved for appeal.

Based on the ordinary meaning of the words as used in the statute, we conclude that the statutory terms "use" and "present" may overlap in meaning, that a transaction need not be consummated to support a jury finding that a defendant used a debit card, and that the court of appeals erred by determining that the evidence is insufficient to establish debit card abuse. Because we reinstate the trial court's judgment, we conclude that appellant's petition regarding the reformation of the judgment was improvidently granted.

## I. Background

Steven Hubbard's vehicle was burglarized, resulting in the loss of his debit card, among other items. Later that day, appellant received the card from another individual, whom she knew was not the owner. To purchase cigarettes, appellant swiped the stolen debit card through a card reader at a Wal-Mart. The store declined the card, did not debit Hubbard's account, and did not permit appellant to obtain the cigarettes.

The State charged appellant with debit card abuse by indictment, which alleged that she

> did then and there with intent to fraudulently obtain a benefit, use a debit card, namely, a First National Bank debit card, with knowledge that the card had not been issued to the said defendant, and with knowledge that said card was not used with the effective consent of the cardholder, namely, S. Hubbard.

*See* TEX. PEN. CODE § 32.31(b)(1). Consistent with this indictment, the jury charge required the State to prove that appellant "used" the debit card. The jury found appellant guilty.

In her direct appeal, appellant argued that the State presented insufficient evidence to prove debit card abuse, and the court of appeals agreed. *Clinton*, 327 S.W.3d at 370. According to appellant, failure to complete the transaction and obtain a benefit means she presented the credit card, but did not use it. *Id*. The court of appeals analyzed the definitions of "use" and "present" and concluded that appellant's actions were not covered by the definition of "use." *Id*. (citing TEX. GOV'T CODE § 311.021(2)). According to the court of appeals, interpreting "use" to include appellant's actions renders the word meaningless in the statute, as "use" and "present" would then overlap in meaning. The court of appeals stated, "If 'uses' is interpreted broadly enough to cover what Clinton has been proven to have

committed, the Texas Legislature would have had no purpose for including, in the statute, the word 'presents' in addition to the word 'uses.'" *Id.* Based on the structure of the statute and the dictionary definition, the court of appeals held that "present" means "to tender [a] debit or credit card" and that "use" means "to employ [a] card in any other manner including, but not limited to, successfully completing a transaction." *Id.*(quoting RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1529, 2097 (2d. ed. 2001)). Because the evidence against appellant did not support a conviction under these definitions, the court of appeals determined the evidence was legally insufficient to support a jury finding that the defendant "used" the debit card, reformed appellant's judgment to reflect a conviction on the lesser-included offense of attempted debit card abuse, and remanded the case for a new punishment hearing. *Id.* at 372.

## II. Analysis

To determine whether the court of appeals properly analyzed the legal sufficiency of the evidence, we must conduct two steps. First, we must determine "the essential elements of the crime" for which the prosecution must provide sufficient evidence to support a conviction. *Geick v. State*, ___ S.W.3d ___, No. PD-1734-10, 2011 Tex. Crim. App. LEXIS 1342, *6 (Tex. Crim. App. 2011) (not yet reported). Second, we conduct a sufficiency review by examining all of the evidence in the record in the light most favorable to verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 318

(1979). We conduct a de novo review of statutory interpretation. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

### A. Essential Elements of Crime

To identify "the essential elements of the crime," we look to "the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* This list is "not necessarily exhaustive." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The law as authorized by the indictment consists of "the statutory elements of the offense . . . as modified by the charging instrument." *Id.* "[W]hen the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, 'the law' for purposes of the hypothetically correct charge[] is the single method alleged in the indictment." *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001).

The penal code provides that a person may be guilty of debit card abuse either by using it or presenting it. *See* TEX. PEN. CODE § 32.31(b)(1). But because the indictment limits the manner and means of committing debit card abuse to only "use," the State must prove that the appellant used the debit card for the evidence to be sufficient. *See id; Curry*, 30 S.W.3d at 404 (holding that sufficiency of evidence must be weighed against "manner and

means of abduction" alleged in indictment); *see also Gollihar*, 46 S.W.3d at 254 (stating that law authorized by indictment is limited to "the single method alleged in the indictment").

**B. Sufficiency Review**

Because the State must prove "use" of the debit card for the evidence to be legally sufficient, we must define "use" before reviewing the evidence.

**1. Applicable Law for Interpreting a Statute**

When interpreting statutory language, we focus on the "'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). To determine the collective intent of the Legislature, we look first to the literal text. *Id.* This provides the best means to determine "the fair, objective meaning of that text at the time of its enactment." *Id.*

We construe a statute according to its plain meaning without considering extratextual factors unless the statutory language is ambiguous or imposing the plain meaning would cause an absurd result. *See id.* at 785-86.[1] To determine the plain meaning of a statute, we apply the canons of construction. *Rushing v. State*, ___ S.W.3d. ___, No. PD-0773-10, 2011 Tex. Crim. App. LEXIS 1345, *3 (Tex. Crim. App. 2011) (not yet reported). Among the canons of construction is a list of presumptions regarding legislative intent. *See* TEX. GOV'T

---

[1] *See* TEX. GOV'T CODE § 311.023. Extratexual factors include consideration by a court of (1) the object sought to be attained by the statute; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision. *Id.*

CODE § 311.021. Under these canons, in the Legislature's enactment of a statute, it is presumed that (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. *Id*.

## 2. Analysis of Plain Meaning of Statute

The statutory text provides that a person commits debit card abuse if he presents or uses a debit card with intent to obtain a benefit fraudulently and with knowledge that the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder. TEX. PEN. CODE § 32.31(b)(1). Because the penal code does not define the words "presents" or "uses" for the debit-card-abuse offense, we must determine what those words mean under this statute. *See id*. When analyzing the sufficiency of the evidence, undefined statutory terms "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). But if those statutory terms have a technical meaning, they will be construed consistent with that technical meaning. *See Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000).

When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries. *Ramos v. State,* 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). The verb "present" can be defined several ways, but the most relevant definition

states that to "present" means "to bring or present in the presence of someone." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1793.[2] The word, as commonly used, presumes that the action will be done to or for another individual, who indirectly receives the action. *See id.* By applying this definition to the word "presents" as used in the debit-card statute, we conclude that the defendant must physically show or provide the card to an individual or for another individual, such as swiping a card for a store clerk, but presentment does not require any subsequent result, such as the consummation of the transaction.[3]

The word "use" is likewise susceptible to multiple interpretations. For example, Webster's Dictionary provides that to "use" can mean to carry out a purpose or action by means; to make instrumental to an end or process; to apply to advantage; to turn to account; to utilize. *Id.* at 2524. That dictionary also provides the synonyms "employ, utilize, apply, [and] avail," and it notes that the word "use" is "general and indicates any putting to service of a thing, [usually] for an intended or fit purpose or person." *Id.* Unlike "present," the word "use" does not require the presence of another individual to receive the action; however, the

---

[2] We cite Webster's Third New International Dictionary because we have used it to define the term "use"for other offenses in the penal code. *See Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1998) (defining "use" in deadly-weapon statute). Although this court does not consistently reference a particular dictionary when determining the ordinary meaning of statutory terms, this dictionary is among the most commonly used. *See, e.g., State v. Dobbs*, 323 S.W.3d 184, 189 n.14 (Tex. Crim. App. 2010).

[3] The Court applied a similar definition of "present" when it determined what is required to "present" a motion for new trial to a court. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (stating that "the term 'present' as used in Rule 31(c)(1) [of the Texas Rules of Appellate Procedure] means the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court.").

definition does not necessarily preclude another individual's presence either. By applying Webster's definition to the word "uses" to interpret the meaning of the word in the debit-card statute, we determine that the defendant must employ, utilize, or place the card into service in or out of the presence of another individual, but it does not require any subsequent action such as consummation of action.[4] We conclude that the plain meaning of the words "uses" and "presents" includes some overlap in meaning such that someone can, with the same conduct, both use and present a credit card, and that neither word requires consummation of the transaction.

In applying the pertinent canons of construction, we must presume the Legislature intended for the entire statute to be effective and to produce a just and reasonable result. *See* TEX. GOV'T CODE § 311.021. But the definitions proposed by the court of appeals are contrary to these canons. The court of appeals's conclusion that the definition of "use" in the statute requires consummation of the transaction reads an additional requirement not found in the statute. *See* TEX. PEN. CODE § 32.31(b)(1). Furthermore, a plain reading of the statute, which permits prosecution for the use or presentment of a debit card that "has expired or has been revoked or cancelled," suggests that consummation is not required because it would be

---

[4]     Our interpretation of "use" in this context comports with the definition of "use" we employ in other contexts. *See Patterson*, 769 S.W.2d at 940 (defining "use" in deadly-weapon statute as "any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony"). We have stated that the term "use" in the deadly-weapon statute should be interpreted to have "the broadest possible understanding in context of which it [is] reasonably susceptible in ordinary English." *Tyra v. State*, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995) (citing *Vernon v. State*, 841 S.W.2d 407, 409-10 (Tex. Crim. App. 1992)).

highly unlikely that an individual could consummate a transaction with an expired, revoked, or cancelled card. *See* TEX. PEN. CODE § 32.31(b)(1)(B). Presuming the Legislature intended for the entire statute to be effective and a just and reasonable result, a plain reading of the statute suggests that consummation of the transaction is not required. *See* TEX. GOV'T CODE § 311.021.

Additionally, the definitions suggested by the court of appeals create the possibility of an unjust and unreasonable result through inequitable sentences for similarly situated defendants. *See* TEX. GOV'T CODE § 311.021(3). The court of appeals held that the evidence is sufficient to establish attempted "use" or actual "presentment." *Clinton*, 327 S.W.3d at 368. Under the court of appeals's analysis, had the indictment alleged "presentment" of the card, appellant would have been properly sentenced under this statute. But because the indictment only alleged "use," the conviction had to be reformed to attempted "use," and the case was remanded for new sentencing for attempted debit card abuse, a Class A misdemeanor. *See* TEX. PEN. CODE § 15.01(d) (attempted offense is one category lower than offense that was attempted). Under the court of appeals's analysis, under circumstances like these, the defendant could be charged with "presentment" or with attempted "use," with each offense potentially resulting in a different punishment range. We conclude that the disparity in the applicable punishment range for the same conduct is contrary to the "just and reasonable result" presumably intended by the Legislature.

Although these definitions overlap, other criminal offenses have similar overlap in statutory terms, and we have determined that this does not render those terms meaningless

or as necessarily producing an absurd result. *See Taylor v. State*, 117 S.W.3d 848, 851 (Tex. Crim. App. 2003) (stating that overlap between the definitions of "employee" and "manager" was not "unusual or absurd" and did not justify deviating from "plain" meaning of terms); *see also Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1998) (allowing for overlap between "use" and "exhibit" in deadly-weapon statute). Similarly, these definitions are not absurd merely because there is some overlap in their meaning.[5]

Furthermore, this overlap does not render these definitions ambiguous. "There is nothing vague or ambiguous in stating the act that is an element of the offense in terms of 'presents or uses.'" *Nolan v. State*, 629 S.W.2d 940, 943 (Tex. Crim. App. 1982). The words "presents" and "uses," as used in this statute, are words of common usage, rather than technical terms of art, and so they may be defined by their commonly understood meaning. *See id.* We recognize that applying the commonly understood meaning to these words results in a conclusion that a person who "presents" the card has almost always necessarily "used" it. But the mere fact that the terms overlap does not render them ambiguous. *See Patterson*, 769 S.W.2d at 940.

---

[5] We note that appellant suggests that allowing overlap in "uses" and "present" conflicts with how "manufactures, delivers, or possesses with intent to deliver" is interpreted in the health code. *See* TEX. HEALTH & SAFETY CODE § 481.112(a). Appellant cites no authority in support of this argument. Furthermore, the only case law interpreting these terms involves a different context (double-jeopardy considerations) and does not support appellant's argument. *See Guerrero v. State*, 305 S.W.3d 546, 551 (Tex. Crim. App. 2009) (considering whether double jeopardy barred the prosecution of both manufacturing and possession of methamphetamine); *Lopez v. State*, 108 S.W.3d 293 (Tex. Crim. App. 2003) (holding that State's interpretation, which would allow for individual prosecutions for each manner and means of committing the offense, was "overly literal, and [did] not comport with common sense").

In *Patterson*, this Court determined that any "exhibiting" of a deadly weapon would likely also qualify as a "use." *Id.* Despite this total overlap in terms, the Court did not conclude that either of the terms were ambiguous. *Id.* As *Patterson* illustrates, the presumptions provided by the canons of constructions are presumptions only, and these presumptions often conflict with one another. *See id.* To hold that a definition must completely satisfy all the presumptions of the canons of construction to not be considered ambiguous would result in finding many words to be ambiguous even where the legislative intent is clear. Here, the meaning intended by the legislature is "clearly understood," and we should not conclude otherwise simply on the basis that the terms overlap. *See Nolan* 629 S.W.2d at 943. Because the plain words as used in the statute are not ambiguous and the result is not absurd, we refrain from considering the extratexual factors.

### 3. Application of Plain Language of Statute to This Case

Because the dictionary definitions of "use" and "present" do not depend on obtainment of a benefit, the plain language of the statute makes apparent that an individual need only have utilized the card for the intended purpose of obtaining a benefit. Examining all the evidence in the record in the light most favorable to verdict, the evidence shows that appellant "used" the card when she swiped it through the card reader for the purpose of purchasing cigarettes. *See Jackson*, 443 U.S. at 318. We conclude that any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See id.*; *Vernon*, 841 S.W.2d at 409.

## III. Conclusion

We reverse the court of appeals and reinstate the judgment of the trial court.

Delivered: December 14, 2011
Publish