

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0119-11

### KATHERINE CLINTON, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S AND APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW FROM THE SIXTH COURT OF APPEALS UPSHUR COUNTY

**PRICE, J., filed a concurring opinion.**

### CONCURRING OPINION

I agree with the Court's conclusion that the evidence was legally sufficient to establish that the appellant "used" the debit card in this case.[1] I agree that Section 32.31 of the Penal Code should not be construed in such a way as to require the State to prove that the

---

[1] Majority opinion, at 12.

perpetrator engaged in acquisitive conduct.[2] But I arrive at this conclusion taking a somewhat different route than the Court does. I write separately to explain my own thinking in the matter.

As I understand the Court's opinion, it finds that the plain language of Section 32.31(b)(1) dispels any notion that proof of acquisitive conduct is required. As the Court itself acknowledges, "[t]o determine the plain meaning of a statute, we apply the canons of construction."[3] The Penal Code authorizes courts to consult, *inter alia*, Section 311.021 of the Code Construction Act.[4] That provision, in turn, requires courts to presume that, in enacting a statute, the Legislature intended the entire statute to be effective.[5] *Boykin v. State* dictates that, in considering whether the text of a statute is in fact plain on its face, courts should consult "established canons of construction relating to such text[.]"[6]

---

[2] *See* TEX. PEN. CODE § 32.31 (b)(1) ("A person commits an offense if . . . with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that . . . the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder; or . . . the card has expired or has been revoked or cancelled[.]").

[3] Majority opinion, at 6.

[4] *See* TEX. PEN. CODE § 1.05(b) ("Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code.").

[5] *See* TEX. GOV'T CODE § 311.021(2) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[.]").

[6] 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). *See also Shipp v. State*, 331 S.W.3d 433, 437 & n.22 (Tex. Crim. App. 2011) (plurality opinion).

Unlike the Court, I do not find the language of Section 32.31(b)(1) to be wholly without ambiguity. Applying the canon of statutory construction that all words must be given independent significance, it seems to me, renders Section 32.31(b)(1) less than plain on its face for the very reason that it is not readily evident in what respect the Legislature intended that "using" a credit or debit card to fraudulent effect should differ from "presenting" a credit or debit card to fraudulent effect.[7] On the surface, at least, it is hard to imagine an ordinary use of a credit or debit card that does not also involve its presentment. But if the use of a credit or debit card invariably involves the presentment of the credit or debit card, then the two concepts fail to have independent significance, and, even if use also requires something *more* than mere presentment, presentment is superfluous, since use will include it. Or else, use is redundant because it requires too much, since presentment, a concept wholly subsumed by use, will always serve by itself to constitute an offense under the statute. Only where, as here, the indictment alleges only use, not presentment, does the State commit itself to proving whatever it is that use requires *beyond* mere presentment. The court of appeals made a valiant attempt to construe the statute in a way that would give each word at least some independent meaning, essentially by declaring that using a credit or debit card requires proof

---

[7] It is true that in *Nolan v. State*, 629 S.W.2d 940, 943 (Tex. Crim. App. 1982), we declared that there was "nothing vague or ambiguous" about Section 32.31(b)(1)'s "presents or uses" element such as would render the statute unconstitutionally vague, "for they are words of such common usage that the simple act of presenting or using may be clearly understood." But that case did not involve the question of the difference in meaning that the Legislature contemplated the two words should have.

of acquisitive conduct, while presentment does not.[8]  Accordingly, because the State alleged only "use," but did not prove that the appellant successfully acquired any benefit, the court of appeals held that the evidence was insufficient to support the appellant's conviction.[9]

The Court today concludes that the respective dictionary definitions of neither "uses" nor "presents" will support the court of appeals's conclusion that Section 32.31(b)(1) requires the State to prove the actual attainment of a benefit.[10]  For this reason, the Court rejects the court of appeals's holding that use can be differentiated from presentment on this particular basis.[11]  I am inclined to agree with the Court's bottom line—if for no other reason than that Section 32.31(b)(1) appears in Chapter 32 of the Penal Code, which generally proscribes conduct that is fraudulent in nature, not necessarily acquisitive.  But if neither "uses" nor "presents" requires proof of acquisitive conduct, how else may the two words be delineated?  The Court seems never to squarely confront this question even though it was central to the court of appeals's analysis.

Because I regard Section 32.31(b)(1) as ambiguous, I am free in my own thinking to

---

[8]  *Clinton v. State*, 327 S.W.3d 366, 371 (Tex. App.—Texarkana 2010) ("In order to prevent the term 'present' from being rendered meaningless, we conclude that 'present' under Section 32.31 means to tender the debit or credit card, and 'use' means to employ the card in any other manner including, but not limited to, successfully completing a transaction.").

[9]  *Id*. at 371-72.

[10]  Majority opinion, at 7-9.

[11]  *Id*., at 12.

proceed beyond the text of the statute itself to consider extra-textual factors. Section 311.023(4) of the Code Construction Act permits the courts, in construing a statute, to consider "former statutory provisions, including laws on the same or similar subjects[.]"[12] According to the Practice Commentary accompanying the 1973 enactment of Section 32.31 of the Penal Code, it was intended to be "a restatement" of two former penal code provisions.[13] The first of these former provisions was Article 1555b of the old Penal Code. As originally enacted in 1959, Article 1555b seemed on its face to proscribe acquisitive conduct; it made it unlawful to "knowingly make use" of an expired or revoked gasoline credit card "in obtaining credit for the purchase of gasoline, motor oil, or other motor vehicle supplies, equipment, or services."[14] That the Legislature intended for this language to require proof of acquisitive conduct was underscored by the language of the penalty provisions of the statute, which tied the level of punishment to which the actor was susceptible to "the amount of the credit purchase" involved.[15]

---

[12]

TEX. GOV'T CODE § 311.023(4).

[13]

See TEX. PENAL CODE § 32.31 (West 1989), Practice Commentary at 200 ("Section 32.31 is a restatement of Articles 1555b and 1555c of the old Penal Code with several changes" not pertinent to the present issue).

[14]

See Acts 1959, 56th Leg., ch. 408, § 1, p. 885, eff. May 30, 1959 ("It shall be unlawful for any person to knowingly make use of any expired or revoked credit card or 'courtesy card' in obtaining credit for the purchase of gasoline, motor oil, or other motor vehicle supplies, equipment, or services.").

[15]

Id. § 4, p. 886.

But in 1963, the Legislature rewrote Article 1555b from scratch.[16] The new version of Article 1555b did not just apply to gasoline credit cards, but made it unlawful to "present" any credit card with the fraudulent intent to obtain goods or services.[17] Then, as now, a "credit card" was defined to include, *inter alia*, a "number" authorizing the holder or purported holder to obtain goods and services on credit.[18] To "present" a credit card was defined to embrace:

> not only physical presentation of such card but also . . . the representation by the person attempting to obtain, obtaining or paying for items of value or services that such card is valid and exists, and the person so honoring such card [must rely] on such statement from the person making its presentation.[19]

It would thus appear that, under Article 1555b, it would have constituted an offense, *inter alia*, to fraudulently attempt to obtain goods or services by reading a purported credit card number to a sales or service representative over the telephone. No actual credit card was

---

[16] Acts 1963, 58th Leg., ch. 162, p. 460, eff. Aug. 23, 1963.

[17] *Id*. § 1 ("It shall be unlawful for any person to present a credit card or alleged credit card, with the intent to defraud, to obtain or attempt to obtain any item of value or service of any type; or to present such credit card or alleged credit card, with intent to defraud, to pay for items of value or services rendered.").

[18] *Id*. § 3.

[19] *Id*. This definition of presentment was not carried over into present-day Section 32.31(b)(1), but it is a similar (and, I think, common sense) understanding of the word that leads me to believe that any ordinary "use" of a credit or debit card—even the entry of a credit or debit card number, real or fictitious, for the purpose of making an internet purchase—would surely also constitute a "presentment" in contemplation of the current statute.

even required to exist and the actual acquisition of goods or services was unnecessary to consummate the offense. Moreover, from the 1963 amendment on, Article 1555b nowhere proscribed the fraudulent *use* of a credit card at all—only the fraudulent *presentation*.

Then, in 1969, the Legislature enacted Article 1555c of the old Penal Code.[20] This new statute for the most part outlawed the forgery or theft of credit cards themselves and/or the knowing purchase or other acquisition of such forged or stolen credit cards. But Section 9 of Article 1555c additionally proscribed two other kinds of conduct that are relevant to our construction of Section 32.31 of the current Penal Code. First, it made it an offense for a person, with intent to defraud, to "use[ ]" a credit card that is "obtained or retained" contrary to other provisions of Article 1555c "for the purpose of obtaining money, goods, services, or anything else of value[.]"[21] The Legislature obviously did not intend for the word "use" in this context to require proof of acquisitive conduct, but only proof of an inchoate acquisitive *intent*, since the actor need only have the "purpose" to obtain something valuable to be liable for the offense.[22] The second offense enumerated in Section 9 of Article 1555c

---

[20]

Acts 1969, 61st Leg., ch. 813, p. 2429, eff. Sept. 1, 1969.

[21]

*Id*. § 9, p. 2430-31 ("A person who, with intent to defraud the issuer, a person or organization providing money, goods, services, or anything else of value, or any other person . . . (i) uses for the purpose of obtaining money, goods, services, or anything else of value a credit card obtained or retained in violation of [other provisions of Article 1555c] or a credit card which he knows is forged, expired, or revoked . . . is guilty of an offense[.]").

[22]

The Model Penal Code contains similar language, making it an offense whenever a person "uses a credit card for the purpose of obtaining property or services" under fraudulent circumstances.

actually *did* require proof of acquisitive conduct.[23]  But it did so expressly, by requiring that the actor "obtain" the thing of value, without resort to the word "use."

This examination of prior statutes leads me to conclude that the Legislature's employment of the word "use" in Section 32.31(b)(1) of the current Penal Code was not intended—at least not *by itself* intended—to require proof of acquisitive conduct.[24]  Whatever difference we may think the Legislature had in mind in proscribing both the fraudulent "use" and the fraudulent "presentation" of a credit or debit card, it should not involve ascribing a requirement of acquisitive conduct to the former, as the court of appeals erroneously did here.  So how do we differentiate them?  Can we differentiate them in a way that gives some

---

MODEL PENAL CODE § 224.6 (1962).  That proof of actual acquisitive conduct was not intended by the drafters is evident from the penalty provision of the model statute, which makes it a third degree felony if "the value of the property or services secured *or sought to be secured* by means of the credit card exceeds $500[.]" *Id*. (emphasis added).

[23] Acts 1969, 61st Leg., ch. 813, § 9, p. 2430-31 ("A person who, with intent to defraud the issuer, a person or organization providing money, goods, services, or anything else of value, or any other person . . . (ii) obtains money, goods, services, or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, is guilty of an offense[.]").

[24] Elsewhere, Section 32.31 of the current Penal Code does seem to require actual acquisitive conduct, employing the word "use."  *See* TEXAS PENAL CODE § 32.31(b)(7) ("A person commits an offense if . . . he uses or induces the cardholder to use the cardholder's credit card or debit card to obtain property or service for the actor's benefit for which the cardholder is financially unable to pay[.]").  But it accomplishes this by employing the word "use" in combination with the words "to obtain"—much as former Article 1555c, Section 9(a)(ii), employed the word "obtains" to signify the Legislative intent that actual acquisitive conduct be proven.  Similarly, the 1959 version of Article 1555b employed the word "use" to denote acquisitive conduct, but only in combination with the further phrase, "in obtaining credit for the purchase of gasoline," etc.  In the entire history of Section 32.31 and its predecessors, the Legislature does not seem to have ever meant for "use," alone, to signal a requirement that acquisitive conduct be proven.

independent significance to both?

Ultimately, I do not really think that we can. But that does not mean, as the court of appeals believed, that we must attribute an intention to the Legislature that all *other* indicators point against—that the word "uses" in the statute must be interpreted to require acquisitive conduct. As the Court suggests,[25] notwithstanding Section 311.021(2)'s presumption that the entire statute was intended to be effective, we have sometimes tolerated the construction of a statute that not only regards two words as overlapping, but indeed, renders one word wholly subsumed by another. The best example is *Patterson v. State*,[26] in which we construed the deadly weapon provision of Article 42.12, Section 3g, of the Code of Criminal Procedure.[27] In that context, we gave the word "used" a broad meaning even while recognizing that to do so rendered its partner, "exhibited," essentially redundant, since "it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it."[28] Still, we found the broad interpretation of "used" to best comport with the legislative intent.[29] Similarly here, giving the word "uses" in Section 32.31(b)(1) a narrower

---

[25] Majority opinion, at 10-12.

[26] 769 S.W.2d 938 (Tex. Crim. App. 1989).

[27] TEX. CODE CRIM. PROC. art. 42.12, § 3g.

[28] *Patterson*, *supra*, at 941.

[29] I should think that other indicia of legislative intent may serve to rebut the presumption of

construction than the court of appeals opted for is more faithful to the legislative intent, even though to do so essentially renders "presents" superfluous.

      With this explanation, I concur in the judgment of the Court.

FILED:      December 14, 2011
PUBLISH

---

Section 311.021(2). As the Court observed in *Patterson*, "[t]here are a multitude of rules for statutory construction, and authority exists in support of virtually every position one might wish to take. The most common thread running through these competing maxims is for the judiciary to attempt to effectuate the intent of the Legislature." *Id*. at 940. Indeed, "our paramount duty in construing statutory language is to effectuate the intent of the Legislature." *State v. Rodriguez*, 339 S.W.3d 680, 687 (Tex. Crim. App. 2011) (Price, J., concurring).