**Affirmed and Opinion Filed March 26, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01497-CR

### MICHAEL D'ANGELO MASON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-80929-10**

## MEMORANDUM OPINION
Before Justices Bridges, O'Neill, and Brown
Opinion by Justice Bridges

Michael D'Angelo Mason appeals his aggravated sexual assault conviction. The trial judge found appellant guilty and sentenced him to sixty-two years' confinement. In two issues, appellant challenges the sufficiency of the evidence to show the knife used in the commission of the offense was a deadly weapon and argues the trial court erred in allowing evidence of an extraneous offense. We affirm the trial court's judgment.

In February 2010, the sixty-three-year-old female complainant lived next door to appellant and his family. Complainant and appellant would "say hello" when they saw each other, and complainant drove appellant to the mall "from time to time." At the beginning of February, appellant and his family moved out of the house next door. On the night of February 12, appellant rang complainant's doorbell. Complainant looked outside and recognized

appellant. She opened the front door and spoke with appellant through a locked storm door. Appellant said his car had stalled and he needed to call for help. Complainant gave appellant her cell phone through the door, and appellant called someone but couldn't get through. Appellant said his aunt was going to call him back, and he handed the cell phone back through the door. Complainant kept the screen door locked, but appellant "started kind of dancing around" and said he had to go to the bathroom. There was "a lot of snow on the ground," and appellant was not "dressed for the snow weather." Complainant let appellant inside, and he went into a bathroom. When he came out, complainant was sitting at the kitchen table sewing and "waiting for this phone to ring again." Appellant expressed an interest in the sewing machine and got behind complainant during the conversation. From behind complainant, appellant grabbed her around the neck, started choking her, and made her stand up. Appellant "had a knife" and said, "just do what I say or I'll cut you, I'll cut you."

Complainant could only see the tip of the knife, but "it was pointy, and it kind of came and around and over." Complainant had no doubt she was looking at a deadly weapon. Complainant tried to "talk [appellant] down" and thought she could hurt him and get away, but she did not know if she could "get away from this knife." At that point, complainant thought appellant "was just going to rob." Appellant repeatedly stated, "I'll cut you, do as I say," and he pushed complainant into another room. Complainant continued to ask appellant "Why are you doing this?" and told him her purse was on the counter and he could just "take it and go." Appellant continued pushing complainant back into the master bedroom. Complainant was "still trying to stay calm" and still thinking how she could "get away from this knife." In the bedroom, complainant said she did not have any money, and appellant said, "No, take off your pants." Complainant pulled her pants down because she could not get away from appellant and "that knife [was] always there." Appellant pushed complainant to the bed, took his pants off, and said

–2–

he was "going to lick [complainant] down there." Appellant licked complainant's sexual organ and then penetrated her vagina with his penis. The knife was "always present" during the sexual assault, and appellant was "always threatening." Appellant finished and told complainant, "Don't do anything stupid or I'll cut you." Appellant told complainant not to move, took a portable phone from the nightstand and complainant's cell phone from the floor, and left the room. Appellant closed the bedroom door when he left. Complainant got up and locked the door before activating a silent alarm. After the police arrived and it was apparent appellant was out of the house, complainant noticed her purse was gone. In her purse, among other things, were credit cards, her driver's license, and a Coach wristlet. An ambulance arrived and transported complainant to the hospital where she was given a sexual-assault exam.

Plano police detective Beth Chaney was assigned to complainant's case and interviewed complainant at the hospital and later conducted a walk-through at complainant's house. Complainant gave Chaney appellant's name, and detectives obtained an arrest warrant and arrested him. Appellant was indicted for aggravated sexual assault. Specifically, the indictment alleged appellant committed sexual assault and "exhibited a deadly weapon, to wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury."

At a subsequent trial before the court, the State introduced into evidence, among other things, a video showing appellant using one of complainant's credit cards to make a purchase at Wal-Mart. Appellant objected to the video on the ground that it demonstrated an extraneous offense and was therefore inadmissible. The trial judge overruled appellant's objection but stated the video was admitted "for the sole or limited purpose of identity as it relate[d] to the indictment before the Court and for no other extraneous reasons." At the conclusion of the guilt/innocence phase of trial, the judge found appellant guilty of aggravated sexual assault.

At the punishment phase of trial, the defense offered evidence of appellant's troubled childhood and the fact that appellant was receiving social security disability insurance payments for a mental health condition. The State presented two additional witnesses who testified appellant had raped them at knifepoint. Additionally, the State introduced evidence of prior convictions for assault with bodily injury, theft of more than $50 but less than $500, and failure to identify a fugitive from justice. At the conclusion of the punishment phase, the judge sentenced appellant to sixty-two years' confinement, and this appeal followed.

In his first issue, appellant argues the evidence did not establish the knife described by complainant was a deadly weapon. The only relevant standard when reviewing the sufficiency of the evidence is the standard set out in *Jackson v. Virginia,* 443 U.S. 307 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In determining the sufficiency of the evidence, an appellate court is to consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We defer to the factfinder's determinations of the witnesses' credibility and the weight to be given their testimony, because the factfinder is the sole judge of those matters. *Id.* at 326.

A person commits aggravated sexual assault if, in the course of committing sexual assault, he uses or exhibits a deadly weapon in the course of the same criminal episode. TEX. PENAL CODE ANN. §22.021(a)(2)(A)(iv). A "deadly weapon" is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* at §1.07(a)(17)(B).

Here, appellant contends the evidence is insufficient to show he used or intended to use a knife in a manner capable of causing serious bodily injury and, therefore, he did not use or exhibit a deadly weapon as required to uphold his conviction. We disagree.

In *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989), the court of criminal appeals discussed the difference between the meaning of "exhibit" and the meaning of "use" in article 42.12 of the Texas Code of Criminal Procedure. The Court explained that the word "use" typically means that a deadly weapon must be "utilized, employed, or applied in order to achieve its intended result: 'the commission of a felony offense or during immediate flight therefrom.'" *Id.* "Use" extends to "*any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Id.* The word "exhibit," however, requires a weapon to be "consciously shown, displayed, or presented to be viewed during 'the commission of a felony offense or during immediate flight therefrom.'" *Id.* Thus, as the *Patterson* Court explained, one can "use" a weapon without exhibiting it, but not vice versa. *Id.*

The definition of deadly weapon does not require that the actor actually intend death or serious bodily injury. *See* §1.07(a)(17)(B). Rather, an object is a deadly weapon if the actor intends a use of the object in which it would be *capable of causing* death or serious bodily injury. *Bailey v. State*, 38 S.W.3d 157, 158-59 (Tex. Crim. App. 2001). The determining factor is that the deadly weapon was "used" *in facilitating* the underlying crime. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (butcher knife partially exposed during robbery enabled factfinder rationally to conclude knife was exhibited during criminal transaction or, at least, its presence was used to instill apprehension in complainant, reducing likelihood of resistance during encounter); *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (BB gun used during robbery; jury may rationally infer BB gun is loaded, and "it is reasonable to infer that defendants use loaded guns to facilitate convenience store robberies).

Appellant argues the only description of the knife was provided by complainant, and the trial judge therefore erred in making a deadly weapon finding. The record shows appellant grabbed complainant from behind and threatened to "cut" her. Complainant saw the knife and

testified "it was pointy, and it kind of came and around and over." Complainant thought she might get away from appellant, but she did not know if she could "get away from this knife." During the course of the incident, appellant continued to threaten to "cut" complainant. The knife was "always present" during the sexual assault, and appellant was "always threatening." Thus, appellant exhibited the knife during the sexual assault, repeatedly threatened to "cut" complainant with it, and the knife clearly facilitated the sexual assault. *See Adame*, 69 S.W.3d at 582; *McCain*, 22 S.W.3d at 503.

Viewing the evidence in the light most favorable to the verdict, we conclude it was rational for the judge, as factfinder, to make the deadly weapon finding. *See Jackson*, 443 U.S. at 319; *Patterson*, 769 S.W.2d at 941; *see also Revell v. State*, 885 S.W.2d 206, 210 (Tex. App.−Dallas 1994, pet. ref'd) (appellant's use of physical force in placing knife against victim's throat shows assertive conduct sufficient to support the deadly weapon finding). We overrule appellant's first issue.

In his second issue, appellant argues the trial court erred in allowing the State to introduce the video of him using complainant's credit card at Walmart. Specifically, appellant complains the video is evidence of an extraneous offense offered for the limited purpose of proving identity when appellant never made an issue of his identity. Appellant argues the video could have influenced the judge to his detriment.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* Although we no longer presume that a trial court will disregard inadmissible evidence, when a case is tried to a trial court rather than to a jury, the danger that the trier of fact will consider extraneous offense evidence for anything other than the limited purpose for which

it is admitted is reduced, and the likelihood that the extraneous evidence will unfairly prejudice the defendant is diminished. *Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.−Austin 1999, no pet.). In this case, the judge stated the video was admitted "for the sole or limited purpose of identity as it relate[d] to the indictment before the Court and for no other extraneous reasons." Thus, the record shows the judge clearly did not consider the video at issue as evidence of an extraneous offense. Accordingly, the trial judge did not abuse her discretion in admitting the video. We overrule appellant's second issue.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121497F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL D'ANGELO MASON, Appellant

No. 05-12-01497-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-80929-10.
Opinion delivered by Justice Bridges.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 26, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE