**AFFIRMED; Opinion Filed August 11, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00833-CR
### No. 05-14-00834–CR

**MALCOLM MCCLENON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F12-54585-W & F12-54586-W**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Myers

Appellant Malcolm McClendon was indicted for intentionally and knowingly possessing

marijuana in an amount of fifty pounds or less but more than five pounds.[1]  The State alleged

appellant used or exhibited a deadly weapon in the commission of the offense.  Appellant also

was indicted for the unlawful possession of a firearm by a felon.[2]  Appellant pleaded not guilty to

the charges and pleaded not true to the deadly weapon allegation.  The jury found appellant

guilty as charged, made an affirmative deadly weapon finding, and assessed punishment at

fifteen years' imprisonment in the marijuana case and ten years in the firearm case.  The trial

court ordered the sentences to be served concurrently.  In three issues, appellant argues the

---

[1] Cause number 05-14-00833-CR; trial court cause number F12-54585-W.

[2] Cause number 05-14-00834-CR; trial court cause number F12-54586-W.

evidence is insufficient to support the convictions for possession of marijuana and possession of a firearm by a felon, and that he used or exhibited a deadly weapon during the commission of the possession of marijuana offense. We affirm.

**DISCUSSION**

### *Possession of Marijuana*

In his first issue, appellant contends the evidence is insufficient to support the conviction in 05–14–00833–CR for possession of marijuana in the amount of fifty pounds or less but more than five pounds. He argues that he was not in close proximity to the drugs, nor is there evidence the drugs were found in plain view while appellant was in the home, and that he did not have exclusive custody and control of the house where the drugs were found. Appellant also argues the other factors do not link him to the contraband.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the trier of fact's determination of witness credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

To establish unlawful possession of a controlled substance, the State must prove that appellant exercised control, management, or care of the substance, and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The evidence may be either direct or circumstantial, but must show appellant's connection to the drugs was more than just fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161–

62 (Tex. Crim. App. 2006). Although appellant's mere presence where drugs are found, without more, is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt. *See id*. at 162.

A nonexclusive list of factors that can be sufficient either singly or in combination, to establish possession of contraband include: (1) presence when search is conducted; (2) whether the contraband is in plain view; (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested; (5) possession of other contraband or narcotics when arrested; (6) incriminating statements made by the accused when arrested; (7) an attempt to flee; (8) furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or drug paraphernalia; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) possession of a large amount of cash; (14) conduct indicating a consciousness of guilt; (15) the quantity of the contraband; and (16) whether the accused was the driver of the automobile in which the contraband was found. *See Evans*, 202 S.W.3d at 162 n.12; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd). The number of factors linking a defendant to contraband is not as important as the logical force they create to support an inference of knowing possession of contraband. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

The evidence in this case shows that at around 11:30 a.m. on April 17, 2012, Dallas Police Officer Daniel Foster and several other officers conducted a "knock-and-talk" investigation at a duplex house located at 310 Cumberland Street, Dallas, Texas. The officers were part of a narcotics team and their investigation was in response to a "drug complaint" the department had received. After Officer Foster knocked on the door, appellant opened the door "fairly quickly," exited, and closed it behind him. He was talking on a cell phone. The officers

–3–

could smell the odor of marijuana coming from inside the house. In response to Officer Foster's questions, appellant said he lived at the location. After appellant stepped outside and shut the door, another officer told Officer Foster he had seen someone run up and lock the door behind appellant. That officer, Chris Wagner, testified that he had looked through the window into the living room after appellant stepped outside and saw a man wearing a white t-shirt run to the front door and lock it, grab a small bag from the floor area, and then run to the rear of the residence. The bag was later recovered during the search and marijuana was found inside.

When Detective Foster asked appellant whether there were any other people living in the house, appellant admitted there were other people in the house. Appellant knocked on the front door—he discovered it had been locked behind him—and two other people came out onto the porch area. Appellant told Officer Foster he had been renting the house, living there for the last two or two and a half weeks, and that he was working on the house for the "manager," who lived next door. Appellant told the officers the other two individuals, Dominique Sharper and Michael Kelly, were just visiting him. Appellant admitted they had been smoking marijuana but denied there were any other drugs in the house.

Officer Foster asked appellant for consent to search the house. Appellant replied that he would prefer they ask the "manager" for consent to search because he owned the property; appellant was just renting the apartment from him. Another officer knocked on the door but they were unable to make contact with anyone at the next door unit; it appeared to be vacant. Officer Foster testified that after he informed appellant there was probable cause to believe there were drugs inside the house and that the officers could obtain a search warrant, appellant consented to letting the officers search the house.

Upon commencing the search, the first thing officers found was ten bags of marijuana shoved under a staircase that was under construction at the rear of the house. Officer Wagner

testified that someone walking down the stairs would not see the bags of marijuana, but they would be able to see them if they were going up the stairs. Officer Wagner also discovered a "cutout" with a shelf in the wall of the dining room. The shelf was loose. When he picked up the shelf, Officer Wagner found a hidden compartment containing more marijuana and a gun. The gun was ready to fire. Officer Wagner testified that a person walking through the room would not know the hidden compartment was there. Officer Wagner also testified that they found a scale containing marijuana residue and a large number of empty bags that could have been used to break the marijuana down to sell it on the street. In the living room, officers found a container inscribed with the phrase, "A friend with weed is a friend indeed," and a Tupperware container with the word "kush" on it. Another officer, Rebecca Barrios, testified that she found mail with appellant's name on it. The mail, which was found on a coffee table, was addressed to appellant at an address on Abrams Road, Dallas, Texas, and was dated December 1, 2011. Officers found a Texas Department of Criminal Justice, Parole Division, "electronic monitoring program/daily curfew schedule" that contained appellant's printed name, TDCJ number, and the same Abrams Road address. The schedule stated it was valid from May 12, 2011 until completed successfully. Officers also found a red cell phone and a black cell phone.

A total of $975 in various denominations of currency was found during the search: 35 $20 bills (totaling $700), 15 $10 bills ($150), 15 $5 bills ($75), 40 $1 ($40), and 40 quarters ($10). Officer Barrios testified that the large number of $20 bills was consistent with someone dealing drugs on a $20-a-gram level. Additionally, Michael Kelly, appellant's cousin, testified that appellant's financial situation was precarious:

Q. [PROSECUTOR:] Did he seem to be getting by? What was his financial situation?

A. Really, there was no financial situation.

Q. What do you mean?

A. He really didn't have money. Didn't have money. You know, what he had is what people would help him out. I never known him to have since then no more than 30 or $40. To him, it was like he had money.

Q. 30 or $40 was a lot to him?

A. Not a lot of money, but he looked at it was enough for him to get by that day and probably until the next day. "I got money, 30 or $40," you know.

I'm, "Yeah, okay. You got money."

Q. He was kind of one of those guys that lived day to day?

A. Yeah.

Officers found a total of 5.85 pounds, or 2653.56 grams, of marijuana during their search of the home according to Lauren Woolridge, a drug chemist with the Southwestern Institute of Forensic Sciences. Officer Wagner testified that the marijuana was a high-grade variety known as "kush," "hydro," or "popcorn weed," and that it is more expensive, stronger, and more pungent than "regular" marijuana. He testified that such a large amount of a high-grade marijuana would have given off a distinct odor. Given the strong smell, he believed someone living in the home would have been aware of the marijuana. Officer Wagner also testified that the house was "[p]retty small." Woolridge agreed that, at $20 a gram, the estimated value of the marijuana found in the house would have been $53,071.20.

Detective Timothy Falk, a narcotics detective with the Dallas Police Department, testified that he obtained a search warrant for the two cell phones seized from the residence. He found text messages on both phones that seemed indicative of drug transactions. On the red phone, there were pictures of money and a gun similar to the one seized in this case. Detective Falk testified, however, that there were no text messages or photos on either phone that could be connected to appellant.

The evidence showed appellant was present when the search was conducted. A portion of the 5.85 pounds of marijuana recovered from the property was stashed beneath an unfinished

stairway at the back of the house. Officer Foster testified that the bags of marijuana would have been visible to someone going up the stairs. More marijuana and the gun were found in a hidden compartment in the dining room. Officer Foster testified the house was "pretty small," and the marijuana was hidden in such a way as to be accessible only to one who exercised control over the house. Appellant admitted to law enforcement officers, and he testified at trial, that he was smoking marijuana on April 17, 2012, when the officers arrived. Officer Foster testified that individuals will sometimes attempt to minimize their guilt by admitting to the possession of smaller amounts of drugs while denying any knowledge of larger quantities of drugs found at a location. Officer Foster also testified that, when he knocked on the door, appellant opened the door, walked onto the porch, and quickly shut the door behind him. Another officer observed an individual locking the door behind appellant and then picking up a bag and carrying it to the rear of the house. The bag was recovered during the search and marijuana was found inside. Officer Foster testified that he could smell the odor of marijuana emanating from the house. The evidence showed the marijuana found at the property was of a high-grade quality and that it gave off a strong, pungent odor that would have been difficult for the occupants of the house to ignore. Officers also found a large number of baggies and a scale, and two containers were found in the living room with inscriptions indicating they had been used for marijuana. The evidence found in the house suggested the marijuana was being broken down, packaged, and sold out of the house. Appellant told the officers he lived at the location and that the other two individuals who were with him were just visiting. He said he was renting the house from the "manager" that lived next door, but when officers knocked on the door to the next-door unit, it appeared to be unoccupied. A total of $975 in various denominations of U.S. currency was found during the search. Appellant, however, was unemployed at the time of his arrest, and when appellant's cousin, Kelly, was asked about appellant's financial situation, he responded, in

part, that "there was no financial situation" and that appellant "really didn't have money." Other evidence showed that the large number of $20 bills found by officers (totaling $700 out of the $975 recovered) was consistent with someone dealing drugs on a $20-a-gram level. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence in this case is sufficient to link appellant to the marijuana. We overrule appellant's first issue.

### *Possession of a Firearm by a Felon*

In his second issue, appellant contends the evidence is insufficient to support the conviction for possession of a firearm by a felon.

The indictment in 05–14–00834–CR alleged that on or about April 17, 2012, appellant intentionally and knowingly possessed a firearm, to wit: a handgun, and that the possession was before the fifth anniversary of his release from parole for a prior felony conviction. *See* TEX. PENAL CODE ANN. § 46.04(a)(1).[3] "Possession' means actual care, custody, control, or management." *Id*. § 1.07(a)(39). As in cases involving the possession of a controlled substance, when an individual is charged with the unlawful possession of a firearm, the State must prove the accused (1) exercised care, custody, control, or management over the firearm, and (2) knew the object was a firearm. *See Evans*, 202 S.W.3d at 161; *Poindexter*, 153 S.W.3d at 405. If the accused is not in exclusive possession of the area where the contraband or firearm is found, the evidence must link the accused to the contraband or weapon. *Evan*s, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 406. Regardless of whether the evidence used is direct or circumstantial, the State must establish that the accused's connection with the firearm was more than just fortuitous. *Evans*, 202 S.W.3d at 161. As we noted earlier, mere presence at the location where the contraband is found is insufficient, by itself, to establish actual care, custody,

---

[3] Appellant stipulated to the underlying felony at the beginning of trial, so the only issue before us is whether the evidence is sufficient to support the possession element.

or control of the contraband. *Id*. at 162. But when combined with other links, either direct or circumstantial, presence or proximity may be sufficient to establish that element beyond a reasonable doubt. *See id*. There is no set formula to determine what links are sufficient and the number of links is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the weapon. *Id*. Factors that may establish the link include (1) whether the contraband or weapon was in plain view or found on the accused; (2) the accused's proximity and accessibility to the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the accused made any incriminating statements; (5) whether the accused tried to flee; and (6) whether the accused made furtive gestures. *Id*. at 162 n.12; *Poindexter*, 153 S.W.3d at 409–12.

The jury in this case could have reasonably concluded appellant's connection to the firearm was more than fortuitous. The firearm was found, along with some of the marijuana, in a hidden compartment in the dining room. Officer Wagner testified that a person walking through the dining room would not have known about the hidden compartment. Appellant testified that because the house was being remodeled and only one room was furnished, he was essentially living in one room while he stayed there. Appellant told the officers that while he lived at the 310 Cumberland Street address, the other two individuals were just visiting. Although the gun and some of the marijuana were found in the hidden shelf compartment, Officer Foster testified that the marijuana seized from the house was a high-grade quality and had a strong, pungent odor that would have been apparent to anyone in the house. Appellant, in fact, expressed familiarity with the type and quality of the "kush" marijuana seized in this case, stating on cross-examination that he was familiar with it because he was a "pothead." Kelly testified that, about a week before the arrest, he went to the house and saw a firearm in the back of the house where the remodeling work was being done. The gun "was sitting on the counter" and "was out in the

open." At the time he saw the firearm, the owner of the house, "Mr. D," was at the house and he and appellant were outside talking. Kelly had gone into the house looking for the bathroom and went in the wrong direction. He testified that after he saw the gun he went outside and told appellant and Mr. D, "Hey, somebody needs to go put that up." After reviewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient for a rational jury to find beyond a reasonable doubt that appellant exercised care, custody, control, or management of the firearm. The jury was not required to believe appellant's testimony that he had no idea to whom the handgun belonged. *See Evans*, 202 S.W.3d at 166. Accordingly, the evidence is sufficient to support the jury's verdict. We overrule appellant's second issue.

### *Use or Exhibition of a Deadly Weapon*

In his third issue, appellant argues the evidence is insufficient to support the finding in 05–14–00833–CR that he used or exhibited a deadly weapon during the commission of the possession of marijuana offense.

Article 42.12, section 3g(a)(2) of the Texas Code of Criminal Procedure permits the entry of a deadly weapon finding when it is shown that a defendant used or exhibited a deadly weapon, or he was a party to the offense and knew that a deadly weapon would be used or exhibited. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2). In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). However, the term "exhibit" requires a weapon to be consciously shown, displayed or presented to be viewed. *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941.

When reviewing the sufficiency of the evidence to support a deadly weapon finding, the issue is whether the weapon was found to have facilitated the defendant's possession and

intended distribution of the drugs. *See Coleman*, 145 S.W.3d at 655. The defendant's proximity to the gun at the time of the search is not dispositive. *Id*. at 654. Likewise, ownership is not necessary to establish that a defendant used a deadly weapon in violation of article 42.12, section 3g. *Smith v. State*, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, pet. ref'd). The focus is on the proximity of the guns to the drugs, not the proximity of the guns to the defendant. *See Coleman*, 145 S.W.3d at 654–55; *see also Moreno v. State*, 978 S.W.2d 285, 289 (Tex. App.—Fort Worth 1998, no pet.) (defendant "used" weapons found in container lying beside concealed cocaine to facilitate his possession of narcotics with intent to distribute). We must determine whether the cumulative effect of the factors could have allowed a rational jury to determine that the defendant used the weapons to protect the drugs and the proceeds therefrom. *Coleman*, 145 S.W.3d at 655. If we determine the State failed to show a defendant used a deadly weapon in the commission of an offense, we may delete the deadly weapon finding. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2006).

Officer Foster testified that they found the handgun hidden along with a quantity of the marijuana in the shelf compartment. A handgun is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A). Evidence showed that the handgun, which had been reported stolen out of College Station, was loaded; it had eight rounds in the clip and one in the chamber. The gun was ready to be fired. As Officer Wagner noted, "All you have to do is pull the trigger." Other evidence showed it is very common for people selling drugs to be armed in order to protect their drug supply. A rational trier of fact could have found that appellant "used" the weapon to facilitate his possession and intended distribution of the narcotics. *See Coleman*, 145 S.W.3d at 655. Therefore, the evidence in this case is sufficient for the jury to have concluded appellant used or exhibited a deadly weapon during the commission of the possession of marijuana offense. We overrule appellant's third issue.

We affirm the trial court's judgment.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140833F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

MALCOLM MCCLENON, Appellant

No. 05-14-00833-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F12-54585-W.
Opinion delivered by Justice Myers. Justices Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of August, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MALCOLM MCCLENON, Appellant

No. 05-14-00834-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F12-54586-W.
Opinion delivered by Justice Myers. Justices Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of August, 2015.