PD-1176-15, PD-1177-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/7/2015 11:10:50 AM
Accepted 10/8/2015 2:33:30 PM
ABEL ACOSTA
CLERK

**NOS. PD-1176-15 & PD-1177-15**

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
AT AUSTIN**

---

**MALCOLM MCCLENON,
Petitioner/Appellant**

**v.**

**THE STATE OF TEXAS,
Respondent/Appellee**

---

*On Appeal in Cause Nos. F12-54585-W & F12-54586-W
from the 363rd Judicial District Court
Of Dallas County, Texas
And on Petition for Discretionary Review
from the Fifth District of Texas at Dallas
In Cause Nos. 05-14-00833-CR & 05-14-00834-CR*

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

*Counsel of Record:*

**Lynn Richardson**
**Chief Public Defender**

**Katherine A. Drew**
**Chief, Appellate Division**

**Kathleen A. Walsh**
**Assistant Public Defender**
State Bar Number: 20802200
133 N. Riverfront Blvd., LB 2
Dallas, Texas 75207-399
(214) 653-3550 (*telephone*)
(214) 653-3539 (*fax*)
kwalsh@dallascounty.org

FILED IN
COURT OF CRIMINAL APPEALS

October 8, 2015

ABEL ACOSTA, CLERK

# LIST OF PARTIES

**TRIAL COURT JUDGE**
Andrew J. Kupper, Presiding Judge by assignemnt

**APPELLANT**
Malcolm McClenon

**APPELLANT'S ATTORNEYS**
**AT TRIAL**
Matthew Arnold, State Bar No. 00789129
3500 Maple Avenue, Suite 400
Dallas, TX 75219

**ON APPEAL**
Kathleen A. Walsh, State Bar No. 20802200
Assistant Public Defender
Dallas County Public Defender's Office
133 N. Riverfront Blvd., LB 2
Dallas, Texas  75207-4399

**STATE'S ATTORNEYS**
**AT TRIAL**
Dimitri Anagnostis, State Bar No. 24066767
Andrew Novak, State Bar No. 24048695

**ON APPEAL**
G. Brian Garrison, State Bar No. 24065276

Assistant District Attorneys
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas  75207-4399

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ..............................................1

STATEMENT OF THE CASE...............................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ....................1

QUESTIONS FOR REVIEW ................................................................................2

## QUESTION NO. 1

*Whether the Court of Appeals applied an improper standard of review when it determined that the evidence was sufficient to affirmatively link Appellant to the marijuana without considering all of the evidence in its analysis.*

## QUESTION NO. 2

*Whether the Court of Appeals applied an improper standard of review when it determined that the evidence was sufficient to affirmatively link Appellant to the firearm without considering all of the evidence in its analysis.*

ARGUMENT ........................................................................................................2

    The Court of Appeals' Opinion pertaining to the evidence linking Appellant to the marijuana ...........................................................................3

    The Court of Appeals' Opinion pertaining to the evidence linking Appellant to the firearm.............................................................................6

    Conclusion ...................................................................................................7

PRAYER FOR RELIEF ........................................................................................9

CERTIFICATE OF SERVICE ..............................................................................9

CERTIFICATE OF COMPLIANCE.....................................................................10

APPENDIX

# INDEX OF AUTHORITIES

**Cases**

*Brooks v. State*,
   323 S.W.3d 893 (Tex. Crim. App. 2010) ..........................................................2

*Jackson v.Virginia,*
   443 U.S. 307 (1979) ...................................................................................2, 3

*McClenon v. State,*
   Nos. 05-14-00833-CR, 05-14-00834-CR, 2015 Tex. App. LEXIS 8394
   (Tex. App.—Dallas August 11, 2015) (not designated for publication) ......*passim*

*Merritt v. State*,
   368 S.W.3d 516 (Tex. Crim. App. 2012)............................................................3

*Wirth v. State,*
   361 S.W.3d 694 (Tex. Crim. App. 2012).........................................................3, 8

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW** Malcolm McClenon, Petitioner herein and Appellant before the Court of Appeals, and respectfully submits this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that the facts of the case and the issues raised are such that oral argument will not significantly aid this Court's consideration and disposition of this Petition.

## STATEMENT OF THE CASE

A jury convicted Appellant of the offense of possession of marijuana in the amount of fifty pounds or less but more than five pounds enhanced by a prior conviction for aggravated assault, and the offense of unlawful possession of a firearm by a felon and assessed punishment at 15 years' imprisonment in the marijuana case and 10 years' imprisonment in the firearm case. (RR5: 29-30, 70-71; CR: 68; CR1: 69). The jury also found that Appellant used or exhibited a deadly weapon in the marijuana case. (RR5: 30; CR: 70-71).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On August 11, 2015, in a memorandum opinion, the Court of Appeals for the Fifth District of Texas affirmed Appellant's conviction. *McClenon v. State*,

Nos. 05-14-00833-CR, 05-14-00834-CR-CR, 2015 Tex. App. LEXIS 8394 (Tex. App.—Dallas August 11, 2015) (not designated for publication). (*See Appendix*). No motion for rehearing was filed. This Petition is timely if filed on or before October 12, 2015.[1]

## QUESTIONS FOR REVIEW

### QUESTION NO. 1

***Whether the Court of Appeals applied an improper standard of review when it determined that the evidence was sufficient to affirmatively link Appellant to the marijuana without considering all of the evidence in its analysis.***

### QUESTION NO. 2

***Whether the Court of Appeals applied an improper standard of review when it determined that the evidence was sufficient to affirmatively link Appellant to the firearm without considering all of the evidence in its analysis.***

## ARGUMENT

While an appellate court reviews the evidence in the light most favorable to the verdict, that court must review *all of the evidence* to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Evaluating the evidence in the light

---

[1] Appellant's motion for extension of time in which to file the Petition for Discretionary Review was granted by this Court on September 14, 2015.

most favorable to the verdict is *not* the same as looking *only* to the State's evidence of guilt and ignoring the defense evidence. An appellate court cannot only emphasize evidence that favors it's holding while ignoring controverting testimony. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (finding that a court of appeals incorrectly applied the *Jackson* standard by employing a "divide-and-conquer" approach which failed to consider all of the evidence); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (reversing a court of appeals for selectively emphasizing "snippets of the record that ostensibly favored its holding" while ignoring controverting testimony).

In rejecting Appellant's challenge to the sufficiency of the evidence to affirmatively link him to the marijuana and firearm found hidden in the house in which Appellant had been staying, it is clear from the opinion that the Fifth Court of Appeals applied an improper standard of review when it considered only the evidence which tended to support the verdict and did not discuss or analyze the controverting evidence which refuted any connection between Appellant and the contraband.

### *The Court of Appeals' Opinion pertaining to the evidence linking Appellant to the marijuana.*

Although the court of appeals properly states that Appellant was present when the search was conducted and that marijuana was found hidden beneath an unfinished stairway in the back of the house and in a hidden compartment in the

3

dining room, the court failed to consider and discuss the fact that the evidence also showed that there were two other occupants in the house at the time of the search (RR3: 42-43); that Appellant did not have the exclusive custody and control of the house, nor any ownership interest in the house (RR3: 44-45, 49-50; RR4: 22-25, 32, 87-88); that the owner of the house, along with other workers, had complete access to the house while Appellant was staying there (RR4: 24, 87-88); or that the officers failed to find any personal items tying Appellant to the house. (RR3: 156-57). *McClenon*, 2015 Tex. App. LEXIS 8394 at \*10-11.The court of appeals also failed to consider and discuss the fact that the marijuana behind the stairs could not be seen unless someone was going up the stairs or the fact that Appellant would have never gone up the stairs because the stairs were still under construction and did not lead to anything. (RR3: 90-91). *Id*. Although the court appears to consider the fact that the marijuana found in the dining room was in a hidden compartment in the wall which could not be seen by a person walking through the room, the court discounts the significance of this evidence by referring to testimony from the officers that the house as "pretty small" and the marijuana was hidden in such as to be accessible only to one who exercised control over the house without acknowledging the fact that Appellant did not have the exclusive custody and control of the house. *Id*.

In its opinion, the court of appeals points to the officer's testimony regarding the odor of marijuana in the house and the fact that the marijuana found was a high-grade variety that is more expensive, stronger, and more pungent than "regular" marijuana, thus giving off a distinct odor which someone living in the house would have been aware without giving any consideration to the fact that the evidence also showed that Appellant was an admitted "pothead" who smoked regularly and thus would not consider the odor of marijuana in the house to be significant or indicative of anything other than his own use. (RR3: 48; RR4: 35, 37-39, 49-50, 57, 65, 67, 69-73, 81). *Id.*

In its opinion, the court of appeals refers to the fact that the officers found a large number of baggies and a scale, suggesting that the marijuana was being broken down, packaged, and sold out of the house; however, the court did not consider or discuss the fact that the plastic baggies were found strewn about in a closed closet where there was no marijuana or identifying information found, or the fact that one of the officers testified that someone who was not a police officer may have placed no significance on the empty bags in the closet and just thought that someone was saving bags. (RR3: 180-81). Nor did the court consider or discuss the fact that there was no specific testimony regarding where the scale was found and whether it was found with the baggies. (RR3: 93, 116-17). *Id*. at *11.

5

In its opinion, the court of appeals refers to the fact that $975 in cash was found in various denominations during the search but does not consider or discuss the fact that no officer could testify where the money had been found. (RR3: 153-55). *Id*. at *11-12.

And finally in its opinion, the court of appeals refers to the fact that text messages indicative of drug transactions and photos of money and a gun were found on the two cell phones seized from the residence without considering or discussing the fact the photos and text messages on the phones were not connected to Appellant in any way but were connected to Dominque Sharper, one of the other occupants present in the residence at the time of the search. (RR3: 164-72, 174-75; State Exhibits 45 thru 62). *Id*. at *9.

***The Court of Appeals' Opinion pertaining to the evidence linking Appellant to the firearm.***

In its analysis of the evidence pertaining to the firearm, the court of appeals correctly refers to the fact that the gun was found along with some of the marijuana in the hidden compartment in the dining room and the officer's testimony that a person walking through the dining room would not have known about the hidden compartment but discounts such evidence by referring to the officer's testimony regarding the strong, pungent odor that would have been apparent to anyone in the house and the fact that Appellant expressed his familiarity with the type of marijuana seized in this case. *McClenon*, 2015 Tex. App. LEXIS 8394 at *14-15.

6

The court also refers to Kelly's testimony that about a week before the arrest, he went to the house and saw a firearm in the back of the house where the remodeling work was being done. *Id.* at \*15. What the court fails to consider or discuss in its analysis is the fact that other people not only had access to the house but were present in the house both when the firearm was found by the officers, and when Kelly saw a gun in the house a week prior to the arrest. The court also fails to consider or discuss the fact that no fingerprints were taken from the gun and no fingerprints were taken from the compartment in the wall in which the gun was found. (RR3: 131-32). And finally, the court fails to consider or discuss the fact that the only evidence directly linking anyone to the firearm were the pictures found on Sharper's phone showing Sharper holding a gun and money or Officer Wagner's testimony that there was a pretty clear connection between Sharper and the gun since the photo of the gun on Sharper's phone appeared to be the same gun that was seized from the residence. (RR4: 14).

*Conclusion.*

As set forth above, there was a significant amount of evidence which the Court of Appeals failed to consider or discuss in its sufficiency review. Proper consideration of this evidence would indicate that the State failed to present sufficient evidence to affirmatively link Appellant to either the marijuana or the firearm found hidden in the house. Appellant's mere presence in the house does

7

not link him to contraband found hidden in its bowels. While it would be reasonable to infer that Appellant had some connection to the house as a tenant because he had been staying there for the past two and half weeks, there is also evidence that other people were connected to the house, including the owner and other workers who were working on the remodeling project in the house. Even when Appellant was arrested, he was not alone at the house; both Sharper and Kelly were there with him. Furthermore, the only evidence linking anyone to either the drugs or the firearm was unnequivocal evidence from Sharper's own cell phones showing Sharper to be the one in possession of the contraband. Consequently, this Court should conduct an independent review of the sufficiency of the evidence in these cases. *Wirth*, 361 S.W.3d at 698. In the alternative, this Court should remand this case to the Court of Appeals with instructions to conduct a proper sufficiency review.

## PRAYER FOR RELIEF

For the reasons herein alleged, Appellant prays this Court grant this petition and, upon review, reverse the decision of the Court of Appeals.

Respectfully submitted,

/s/ Kathleen A. Walsh

Kathleen A. Walsh
Lynn Richardson                          Assistant Public Defender
Chief Public Defender               State Bar No. 20802200
Dallas County                             Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, TX.  75207-4399
(214) 653-3550 (telephone)
(214) 653-3539 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2015, a true copy of the foregoing petition for discretionary review was served by electronic delivery to the Appellate Division[2] of the Dallas County Criminal District Attorney's Office at DCDAAppeals@dallascounty.org.; and was also served by electronic delivery to Lisa C. McMinn, State Prosecuting Attorney, at Lisa.McMinn@spa.texas.gov.

/s/ Kathleen A. Walsh

Kathleen A. Walsh

---

[2] G. Brian Garrison, the original State's attorney on appeal, is no longer employed by the Dallas County District Attorney's Office.

9

# CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in this document, which is prepared in Microsoft Word 2010, is 2,470.

/s/ Kathleen A. Walsh
Kathleen A. Walsh



APPENDIX



No *Shepard's* Signal™
As of: October 6, 2015 12:42 PM EDT

# McClenon v. State

Court of Appeals of Texas, Fifth District, Dallas

August 11, 2015, Opinion Filed

No. 05-14-00833-CR, No. 05-14-00834-CR

**Reporter**

2015 Tex. App. LEXIS 8394

MALCOLM MCCLENON, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the 363rd Judicial District Court, Dallas County, Texas. Trial Court Cause Nos. F12-54585-W & F12-54586-W.

## Core Terms

marijuana, contraband, deadly weapon, drugs, firearm, door, gun, weapon, proximity, bag, exhibited, phone, possession of marijuana, narcotics, factors, pounds, odor, hidden compartment, evidence show, arrested, custody, handgun, knocked, bills, shelf

## Case Summary

### Overview

HOLDINGS: [1]-The evidence showed that defendant was present when the search was conducted and suggested the marijuana was being broken down, packaged, and sold out of the house, and the large number of $20 bills found by officers was consistent with someone dealing drugs on a $20-a-gram level; [2]-The evidence was sufficient for a rational jury to find beyond a reasonable doubt that defendant exercised care, custody, control, or management of the firearm and the jury was not required to believe defendant's testimony that he had no idea to whom the handgun belonged; [3]-The evidence showed that the handgun, which had been reported stolen, was loaded and ready to be fired.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN1* In reviewing the sufficiency of the evidence, the appellate court views all the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The appellate court assumes the fact finder resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. The appellate court also defers to the trier of fact's determination of witness credibility and the weight to be given their testimony.

Criminal Law & Procedure > ... > Possession > Simple Possession > Elements

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Definitions

*HN2* To establish unlawful possession of a controlled substance, the State must prove that appellant exercised control, management, or care of the substance, and that he knew the matter possessed was contraband. The evidence may be either direct or circumstantial, but must show appellant's connection to the drugs was more than just fortuitous. Although appellant's mere presence where drugs are found, without more, is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt.

Criminal Law & Procedure > ... > Possession > Simple Possession > Elements

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Definitions

*HN3* A nonexclusive list of factors that can be sufficient either singly or in combination, to establish possession of contraband include: (1) presence when search is conducted; (2) whether the contraband is in plain view; (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested; (5) possession of other contraband or narcotics when arrested; (6) incriminating statements made by the accused when arrested; (7) an attempt to flee; (8) furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or drug paraphernalia; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) possession of a large amount of cash; (14) conduct indicating a consciousness of guilt; (15) the quantity of the contraband; and (16) whether the accused was the driver of the automobile in which the contraband was found. The number of factors linking a defendant to contraband is not as important as the logical force they create to support an inference of knowing possession of contraband.

> Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions
>
> Criminal Law & Procedure > ... > Weapons Offenses > Possession of Weapons > General Overview

*HN4* Possession means actual care, custody, control, or management, *Tex. Penal Code Ann. § 1.07(a)(39)*. As in cases involving the possession of a controlled substance, when an individual is charged with the unlawful possession of a firearm, the State must prove the accused (1) exercised care, custody, control, or management over the firearm, and (2) knew the object was a firearm. If the accused is not in exclusive possession of the area where the contraband or firearm is found, the evidence must link the accused to the contraband or weapon. Regardless of whether the evidence used is direct or circumstantial, the State must establish that the accused's connection with the firearm was more than just fortuitous. Mere presence at the location where the contraband is found is insufficient, by itself, to establish actual care, custody, or control of the contraband. But when combined with other links, either direct or circumstantial, presence or proximity may be sufficient to establish that element beyond a reasonable doubt.

> Criminal Law & Procedure > ... > Weapons Offenses > Possession of Weapons > General Overview
>
> Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions

*HN5* There is no set formula to determine what links are sufficient and the number of links is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the weapon. Factors that may establish the link include (1) whether the contraband or weapon was in plain view or found on the accused; (2) the accused's proximity and accessibility to the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the accused made any incriminating statements; (5) whether the accused tried to flee; and (6) whether the accused made furtive gestures.

> Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions
>
> Criminal Law & Procedure > ... > Use of Weapons > Commission of Another Crime > Elements

*HN6* *Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)* permits the entry of a deadly weapon finding when it is shown that a defendant used or exhibited a deadly weapon, or he was a party to the offense and knew that a deadly weapon would be used or exhibited. In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. However, the term "exhibit" requires a weapon to be consciously shown, displayed or presented to be viewed.

> Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions
>
> Criminal Law & Procedure > ... > Use of Weapons > Commission of Another Crime > Elements

*HN7* When reviewing the sufficiency of the evidence to support a deadly weapon finding, the issue is whether the weapon was found to have facilitated the defendant's possession and intended distribution of the drugs. The defendant's proximity to the gun at the time of the search is not dispositive. Likewise, ownership is not necessary to establish that a defendant used a deadly weapon in violation of *Tex. Code Crim. Proc. Ann. art. 42.12, § 3g*. The focus is on the proximity of the guns to the drugs, not the proximity of the guns to the defendant. The appellate court must determine whether the cumulative effect of the factors could have allowed a rational jury to determine that the defendant used the weapons to protect the drugs and the proceeds therefrom. If the appellate court determines the State failed to show a defendant used a deadly weapon in the commission of an offense, it may delete the deadly weapon finding.

**Counsel:** For Appellants: Katherine Drew, Kathleen Walsh, Lynn Richardson, Dallas, TX.

For Appellees: G. Brian Garrison, Susan Hawk, Dallas, TX.

**Judges:** Before Justices Fillmore, Myers, and Evans. Opinion by Justice Myers.

**Opinion by:** LANA MYERS

# Opinion

MEMORANDUM OPINION

Opinion by Justice Myers

Appellant Malcolm McClendon was indicted for intentionally and knowingly possessing marijuana in an amount of fifty pounds or less but more than five pounds.[1] The State alleged appellant used or exhibited a deadly weapon in the commission of the offense. Appellant also was indicted for the unlawful possession of a firearm by a felon.[2] Appellant pleaded not guilty to the charges and pleaded not true to the deadly weapon allegation. The jury found appellant guilty as charged, made an affirmative deadly weapon finding, and assessed punishment at fifteen years' imprisonment in the marijuana case and ten years in the firearm case. The trial court ordered the sentences to be served concurrently. In three issues, appellant argues the evidence is insufficient to support the convictions for possession of marijuana and possession of a firearm by a felon, and that he used or exhibited a deadly weapon during the commission of the possession of marijuana offense. [*2] We affirm.

## DISCUSSION

### Possession of Marijuana

In his first issue, appellant contends the evidence is insufficient to support the conviction in 05-14-00833-CR for possession of marijuana in the amount of fifty pounds or less but more than five pounds. He argues that he was not in close proximity to the drugs, nor is there evidence the drugs were found in plain view while appellant was in the home, and that he did not have exclusive custody and control of the house where the drugs were found. Appellant also argues the other factors do not link him to the contraband.

*HN1* In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia, 443 U.S. 307, 313, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*; *Brooks v. State, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)*. We assume the fact finder resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)*. We also defer to the trier of fact's determination of witness credibility and the weight to be given [*3] their testimony. *Brooks, 323 S.W.3d at 899*.

*HN2* To establish unlawful possession of a controlled substance, the State must prove that appellant exercised control, management, or care of the substance, and that he knew the matter possessed was contraband. See *Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)*. The evidence may be either direct or circumstantial, but must show appellant's connection to the drugs was more than just fortuitous. See *Evans v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006)*. Although appellant's mere presence where drugs are found, without more, is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt. See *id. at 162*.

*HN3* A nonexclusive list of factors that can be sufficient either singly or in combination, to establish possession of contraband include: (1) presence when search is conducted; (2) whether the contraband is in plain view; (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested; (5) possession of other contraband or narcotics when arrested; (6) incriminating statements made by the accused when arrested; (7) an attempt to flee; (8) furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or drug paraphernalia; [*4] (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) possession of a large amount of cash; (14) conduct indicating a consciousness of guilt; (15) the quantity of the contraband; and (16) whether the accused was the driver of the automobile in which the contraband was found. See *Evans, 202 S.W.3d at 162 n.12*; *McQuarters v. State, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd)*. The number of factors linking a defendant to contraband is not as important as the logical force they create to support an inference of knowing possession of contraband. *Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.)*.

---

[1]  Cause number 05-14-00833-CR; trial court cause number F12-54585-W.

[2]  Cause number 05-14-00834-CR; trial court cause number F12-54586-W.

The evidence in this case shows that at around 11:30 a.m. on April 17, 2012, Dallas Police Officer Daniel Foster and several other officers conducted a "knock-and-talk" investigation at a duplex house located at 310 Cumberland Street, Dallas, Texas. The officers were part of a narcotics team and their investigation was in response to a "drug complaint" the department had received. After Officer Foster knocked on the door, appellant opened the door "fairly quickly," exited, and closed it behind him. He was talking on a cell phone. The officers could smell the odor of marijuana coming from inside the house. In response to Officer [*5] Foster's questions, appellant said he lived at the location. After appellant stepped outside and shut the door, another officer told Officer Foster he had seen someone run up and lock the door behind appellant. That officer, Chris Wagner, testified that he had looked through the window into the living room after appellant stepped outside and saw a man wearing a white t-shirt run to the front door and lock it, grab a small bag from the floor area, and then run to the rear of the residence. The bag was later recovered during the search and marijuana was found inside.

When Detective Foster asked appellant whether there were any other people living in the house, appellant admitted there were other people in the house. Appellant knocked on the front door—he discovered it had been locked behind him—and two other people came out onto the porch area. Appellant told Officer Foster he had been renting the house, living there for the last two or two and a half weeks, and that he was working on the house for the "manager," who lived next door. Appellant told the officers the other two individuals, Dominique Sharper and Michael Kelly, were just visiting him. Appellant admitted they had been smoking [*6] marijuana but denied there were any other drugs in the house.

Officer Foster asked appellant for consent to search the house. Appellant replied that he would prefer they ask the "manager" for consent to search because he owned the property; appellant was just renting the apartment from him. Another officer knocked on the door but they were unable to make contact with anyone at the next door unit; it appeared to be vacant. Officer Foster testified that after he informed appellant there was probable cause to believe there were drugs inside the house and that the officers could obtain a search warrant, appellant consented to letting the officers search the house.

Upon commencing the search, the first thing officers found was ten bags of marijuana shoved under a staircase that was under construction at the rear of the house. Officer Wagner testified that someone walking down the stairs would not see the bags of marijuana, but they would be able to see them if they were going up the stairs. Officer Wagner also discovered a "cutout" with a shelf in the wall of the dining room. The shelf was loose. When he picked up the shelf, Officer Wagner found a hidden compartment containing more marijuana [*7] and a gun. The gun was ready to fire. Officer Wagner testified that a person walking through the room would not know the hidden compartment was there. Officer Wagner also testified that they found a scale containing marijuana residue and a large number of empty bags that could have been used to break the marijuana down to sell it on the street. In the living room, officers found a container inscribed with the phrase, "A friend with weed is a friend indeed," and a Tupperware container with the word "kush" on it. Another officer, Rebecca Barrios, testified that she found mail with appellant's name on it. The mail, which was found on a coffee table, was addressed to appellant at an address on Abrams Road, Dallas, Texas, and was dated December 1, 2011. Officers found a Texas Department of Criminal Justice, Parole Division, "electronic monitoring program/daily curfew schedule" that contained appellant's printed name, TDCJ number, and the same Abrams Road address. The schedule stated it was valid from May 12, 2011 until completed successfully. Officers also found a red cell phone and a black cell phone.

A total of $975 in various denominations of currency was found during the search: 35 $20 [*8] bills (totaling $700), 15 $10 bills ($150), 15 $5 bills ($75), 40 $1 ($40), and 40 quarters ($10). Officer Barrios testified that the large number of $20 bills was consistent with someone dealing drugs on a $20-a-gram level. Additionally, Michael Kelly, appellant's cousin, testified that appellant's financial situation was precarious:

Q. [PROSECUTOR:] Did he seem to be getting by? What was his financial situation?

A. Really, there was no financial situation.

Q. What do you mean?

A. He really didn't have money. Didn't have money. You know, what he had is what people would help him out. I never known him to have since then no more than 30 or $40. To him, it was like he had money.

Q. 30 or $40 was a lot to him?

A. Not a lot of money, but he looked at it was enough for him to get by that day and probably until the next day. "I got money, 30 or $40," you know.

I'm, "Yeah, okay. You got money."

Q. He was kind of one of those guys that lived day to day?

A. Yeah.

Officers found a total of 5.85 pounds, or 2653.56 grams, of marijuana during their search of the home according to Lauren Woolridge, a drug chemist with the Southwestern Institute of Forensic Sciences. Officer Wagner testified that the marijuana [*9] was a high-grade variety known as "kush," "hydro," or "popcorn weed," and that it is more expensive, stronger, and more pungent than "regular" marijuana. He testified that such a large amount of a high-grade marijuana would have given off a distinct odor. Given the strong smell, he believed someone living in the home would have been aware of the marijuana. Officer Wagner also testified that the house was "[p]retty small." Woolridge agreed that, at $20 a gram, the estimated value of the marijuana found in the house would have been $53,071.20.

Detective Timothy Falk, a narcotics detective with the Dallas Police Department, testified that he obtained a search warrant for the two cell phones seized from the residence. He found text messages on both phones that seemed indicative of drug transactions. On the red phone, there were pictures of money and a gun similar to the one seized in this case. Detective Falk testified, however, that there were no text messages or photos on either phone that could be connected to appellant.

The evidence showed appellant was present when the search was conducted. A portion of the 5.85 pounds of marijuana recovered from the property was stashed beneath an unfinished [*10] stairway at the back of the house. Officer Foster testified that the bags of marijuana would have been visible to someone going up the stairs. More marijuana and the gun were found in a hidden compartment in the dining room. Officer Foster testified the house was "pretty small," and the marijuana was hidden in such a way as to be accessible only to one who exercised control over the house. Appellant admitted to law enforcement officers, and he testified at trial, that he was smoking marijuana on April 17, 2012, when the officers arrived. Officer Foster testified that individuals will sometimes attempt to minimize their guilt by admitting to the possession of smaller amounts of drugs while denying any knowledge of larger quantities of drugs found at a location. Officer Foster also testified that, when he knocked on the door, appellant opened the door, walked onto the porch, and quickly shut the door behind him. Another officer observed an individual locking the door behind appellant and then picking up a bag and carrying it to the rear of the house. The bag was recovered during the search and marijuana was found inside. Officer Foster testified that he could smell the odor of marijuana [*11] emanating from the house. The evidence showed the marijuana found at the property was of a high-grade quality and that it gave off a strong, pungent odor that would have been difficult for the occupants of the house to ignore. Officers also found a large number of baggies and a scale, and two containers were found in the living room with inscriptions indicating they had been used for marijuana. The evidence found in the house suggested the marijuana was being broken down, packaged, and sold out of the house. Appellant told the officers he lived at the location and that the other two individuals who were with him were just visiting. He said he was renting the house from the "manager" that lived next door, but when officers knocked on the door to the next-door unit, it appeared to be unoccupied. A total of $975 in various denominations of U.S. currency was found during the search. Appellant, however, was unemployed at the time of his arrest, and when appellant's cousin, Kelly, was asked about appellant's financial situation, he responded, in part, that "there was no financial situation" and that appellant "really didn't have money." Other evidence showed that the large number of $20 [*12] bills found by officers (totaling $700 out of the $975 recovered) was consistent with someone dealing drugs on a $20-a-gram level. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence in this case is sufficient to link appellant to the marijuana. We overrule appellant's first issue.

*Possession of a Firearm by a Felon*

In his second issue, appellant contends the evidence is insufficient to support the conviction for possession of a firearm by a felon.

The indictment in 05-14-00834-CR alleged that on or about April 17, 2012, appellant intentionally and knowingly possessed a firearm, to wit: a handgun, and that the possession was before the fifth anniversary of his release from parole for a prior felony conviction. *See* Tex. Penal Code Ann. § 46.04(a)(1).**HN4** [3]"Possession' means actual care, custody, control, or management." *Id.* § 1.07(a)(39). As in cases involving the possession of a controlled substance, when an individual is charged with the unlawful

---

[3]  Appellant stipulated to the underlying felony at the beginning of trial, so the only issue before us is whether the evidence is sufficient to support the possession element.

possession of a firearm, the State must prove the accused (1) exercised care, custody, control, or management over the firearm, and (2) knew the object was a firearm. *See Evans, 202 S.W.3d at 161*; *Poindexter, 153 S.W.3d at 405*. If the accused is not in exclusive possession of the area where [*13] the contraband or firearm is found, the evidence must link the accused to the contraband or weapon. *Evans, 202 S.W.3d at 162*; *Poindexter, 153 S.W.3d at 406*. Regardless of whether the evidence used is direct or circumstantial, the State must establish that the accused's connection with the firearm was more than just fortuitous. *Evans, 202 S.W.3d at 161*. As we noted earlier, mere presence at the location where the contraband is found is insufficient, by itself, to establish actual care, custody, or control of the contraband. *Id. at 162*. But when combined with other links, either direct or circumstantial, presence or proximity may be sufficient to establish that element beyond a reasonable doubt. *See id.*

HN5 There is no set formula to determine what links are sufficient and the number of links is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the weapon. *Id.* Factors that may establish the link include (1) whether the contraband or weapon was in plain view or found on the accused; (2) the accused's proximity and accessibility to the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the accused made any incriminating [*14] statements; (5) whether the accused tried to flee; and (6) whether the accused made furtive gestures. *Id. at 162 n.12*; *Poindexter, 153 S.W.3d at 409-12*.

The jury in this case could have reasonably concluded appellant's connection to the firearm was more than fortuitous. The firearm was found, along with some of the marijuana, in a hidden compartment in the dining room. Officer Wagner testified that a person walking through the dining room would not have known about the hidden compartment. Appellant testified that because the house was being remodeled and only one room was furnished, he was essentially living in one room while he stayed there. Appellant told the officers that while he lived at the 310 Cumberland Street address, the other two individuals were just visiting. Although the gun and some of the marijuana were found in the hidden shelf compartment, Officer Foster testified that the marijuana seized from the house was a high-grade quality and had a strong, pungent odor that would have been apparent to anyone in the house. Appellant, in fact, expressed [*15] familiarity with the type and quality of the "kush" marijuana seized in this case, stating on cross-examination that he was familiar with it because he was a "pothead." Kelly testified that, about a week before the arrest, he went to the house and saw a firearm in the back of the house where the remodeling work was being done. The gun "was sitting on the counter" and "was out in the open." At the time he saw the firearm, the owner of the house, "Mr. D," was at the house and he and appellant were outside talking. Kelly had gone into the house looking for the bathroom and went in the wrong direction. He testified that after he saw the gun he went outside and told appellant and Mr. D, "Hey, somebody needs to go put that up." After reviewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient for a rational jury to find beyond a reasonable doubt that appellant exercised care, custody, control, or management of the firearm. The jury was not required to believe appellant's testimony that he had no idea to whom the handgun belonged. *See Evans, 202 S.W.3d at 166*. Accordingly, the evidence is sufficient to support the jury's verdict. We overrule appellant's second issue. [*16]

*Use or Exhibition of a Deadly Weapon*

In his third issue, appellant argues the evidence is insufficient to support the finding in 05-14-00833-CR that he used or exhibited a deadly weapon during the commission of the possession of marijuana offense.

HN6 *Article 42.12, section 3g(a)(2) of the Texas Code of Criminal Procedure* permits the entry of a deadly weapon finding when it is shown that a defendant used or exhibited a deadly weapon, or he was a party to the offense and knew that a deadly weapon would be used or exhibited. *See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2)*. In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Coleman v. State, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004)*; *Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)*. However, the term "exhibit" requires a weapon to be consciously shown, displayed or presented to be viewed. *Coleman, 145 S.W.3d at 652*; *Patterson, 769 S.W.2d at 941*.

HN7 When reviewing the sufficiency of the evidence to support a deadly weapon finding, the issue is whether the weapon was found to have facilitated the defendant's possession and intended distribution of the drugs. *See Coleman, 145 S.W.3d at 655*. The defendant's proximity to the gun at the time of the search is not dispositive. *Id. at 654*. Likewise, ownership is not necessary to establish that a defendant used a deadly weapon in violation of *article 42.12, section 3g*. *Smith v. State, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, pet. ref'd)*. The focus is [*17] on the proximity of the guns to the drugs, not the proximity of the guns to the defendant. *See Coleman, 145 S.W.3d at 654-55*;

*see also* *Moreno v. State, 978 S.W.2d 285, 289 (Tex. App.—Fort Worth 1998, no pet.)* (defendant "used" weapons found in container lying beside concealed cocaine to facilitate his possession of narcotics with intent to distribute). We must determine whether the cumulative effect of the factors could have allowed a rational jury to determine that the defendant used the weapons to protect the drugs and the proceeds therefrom. *Coleman, 145 S.W.3d at 655*. If we determine the State failed to show a defendant used a deadly weapon in the commission of an offense, we may delete the deadly weapon finding. *See* *Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2006)*.

Officer Foster testified that they found the handgun hidden along with a quantity of the marijuana in the shelf compartment. A handgun is a deadly weapon per se. *TEX. PENAL CODE ANN. § 1.07(a)(17)(A)*. Evidence showed that the handgun, which had been reported stolen out of College Station, was loaded; it had eight rounds in the clip and one in the chamber. The gun was ready to be fired. As Officer Wagner noted, "All you have to do is pull the trigger." Other evidence showed it is very common for people selling drugs to be armed in order to protect their drug supply. A rational trier of fact could have found [*18] that appellant "used" the weapon to facilitate his possession and intended distribution of the narcotics. *See* *Coleman, 145 S.W.3d at 655*. Therefore, the evidence in this case is sufficient for the jury to have concluded appellant used or exhibited a deadly weapon during the commission of the possession of marijuana offense. We overrule appellant's third issue.

We affirm the trial court's judgment.

/s/ Lana Myers

LANA MYERS

JUSTICE

Do Not Publish

*TEX. R. APP. P. 47*

**JUDGMENT**

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. Judgment entered this 11th day of August, 2015.